**Earl Marion GRINDSTAFF**

v.

**STATE of Tennessee.**

Supreme Court of Tennessee, at Knoxville.

Sept. 3, 2009 Session.

Oct. 30, 2009.

Robert E. Cooper, Jr., Attorney General & Reporter; Michael E. Moore, Solicitor General; Rachel West Harmon, Assistant Attorney General; James Bruce Dunn, District Attorney General; and Amanda H. Inman, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

GARY R. WADE, J., delivered the opinion of the court, in which JANICE M. HOLDER, C.J., CORNELIA A. CLARK, WILLIAM C. KOCH, JR., and SHARON G. LEE, JJ., joined.

The petitioner, who entered pleas of guilt to five counts of aggravated sexual battery and received an effective sentence of thirty years, filed a petition for post-conviction relief on grounds of ineffective assistance of counsel. The trial court denied relief. The Court of Criminal Appeals affirmed, finding that the petitioner's trial counsel had performed deficiently but concluding that no prejudice resulted. Because the performance of trial counsel did not meet the objective standard of reasonableness and because the petitioner was prejudiced as a result, we grant post-conviction relief, set aside the guilty pleas, and remand for trial.

On February 15, 2005, Earl Marion Grindstaff (the "Petitioner"), then fifty-five years of age, entered pleas of guilt to five counts of aggravated sexual battery, a Class B felony.[1] By the terms of the plea agreement, the trial court was to determine both the length and the manner of service of the sentence for each offense.[2]

Brad Lewis Davidson, Newport, Tennessee, for the appellant, Earl Marion Grindstaff.

---

1. "Aggravated sexual battery" includes "unlawful sexual contact with a victim by the defendant or the defendant by a victim [when t]he victim is less than thirteen (13) years of age." Tenn.Code Ann. § 39–13–504(a)(4) (2003).

2. "The district attorney general and the defendant's attorney ... may discuss and reach

As a Range I offender, the Petitioner was subject to a sentence of not less than eight nor more than twelve years on each of the five offenses. Tenn.Code Ann. § 40–35–112(a)(2) (2003). The Petitioner's inappropriate contact with the twelve-year-old victim, who was a friend of his granddaughter, served as the factual basis for the guilty pleas. In a statement made to a detective with the Cocke County Sheriff's Department, the Petitioner confessed to touching either the breasts of the victim, her genital area, or her buttocks on at least five separate occasions. Each of the offenses occurred at the Petitioner's residence during times the victim spent the night with his granddaughter.

At the sentencing hearing on May 2, 2005, trial counsel argued that the Petitioner qualified as "a candidate for alternative sentencing" and proposed "community correction or probation" "for the rest of his life."[3] He also contended that the Petitioner met the criteria of an especially mitigated offender and was entitled to consideration for a reduced sentence.[4] At the conclusion of the proceedings, the trial court, which made no explicit reference to whether the Petitioner qualified for either a reduced or an alternative sentence, imposed terms of ten years on each of the

five counts of aggravated sexual battery, ordered confinement in the Department of Correction, and directed that two of the counts be served consecutively to the other three counts, an effective sentence of thirty years at one hundred percent service.

On direct appeal, the Court of Criminal Appeals affirmed, rejecting arguments that the trial court had erred by the imposition of the term or by the denial of an alternative sentence. *State v. Grindstaff,* No. E2005–02059–CCA–R3–CD, 2006 WL 1540257, at *1 (Tenn.Crim.App. June 6, 2006). The Court of Criminal Appeals further observed that the Petitioner "was not eligible for probation because he was convicted of aggravated sexual battery, a specifically excluded offense." *Id.* at *6. This Court denied the application for permission to appeal on October 30, 2006.

On March 15, 2007, the Petitioner filed a petition for relief under Tennessee's Post-Conviction Procedure Act, Tenn.Code Ann. § 40–30–101, *et seq.,* alleging that he had been denied the effective assistance of counsel. He contended that Assistant Public Defender Keith Haas ("trial counsel") had failed to adequately communicate his exposure to a sentence of confinement and also had failed to lodge an objection to

---

a plea agreement. The court shall not participate in these discussions. If the defendant pleads guilty or nolo contendere to a charged offense or a lesser or related offense, the plea agreement may specify that the district attorney general will: ... (B) recommend, or agree not to oppose the defendant's request for, a particular sentence, with the understanding that such recommendation or request is not binding on the court[.]" Tenn. R.Crim. P. 11(c)(1).

3. *See* Tenn.Code Ann. § 39–13–524(a)–(c) (2003) (stating that a judgment of conviction under, among other provisions, Tennessee Code Annotated section 39–13–504, shall include that the convicted person "is sentenced to community supervision for life ... upon

the expiration of the term of imprisonment imposed upon such person ... or upon such person's release from regular parole supervision, whichever first occurs").

4. "The court may find the defendant is an especially mitigated offender, if: (1) The defendant has no prior felony convictions; and (2) The court finds mitigating, but no enhancement factors." Tenn.Code Ann. § 40–35–109(a) (2003). "If the court finds the defendant an especially mitigated offender, the court shall reduce the defendant's statutory Range I minimum sentence by ten percent (10%), or reduce the release eligibility date to twenty percent (20%) of the sentence, or both reductions." Tenn.Code Ann. § 40–35–109(b).

the sentencing hearing, which was not held within forty-five days after the entry of the Petitioner's guilty pleas, as required by statute. *See* Tenn.Code Ann. § 40–35–209(a) (2003).

At the post-conviction evidentiary hearing, the Petitioner's son, John Wiley Grindstaff, testified that trial counsel had assured the Petitioner that he would receive a probationary sentence if he pled guilty to the charges. The Petitioner's wife, Gay Grindstaff, who was present during several of the meetings between the Petitioner and his trial counsel, also testified. She claimed that trial counsel had never provided any indication that the Petitioner might be incarcerated after his guilty pleas. As proof of his expectation of an alternative sentence, she explained that the Petitioner, a commercial truck driver, had arranged to make a delivery on the day following his sentencing hearing.

The Petitioner, who served in the United States Navy for twenty-two years, received decorations for his service in the Vietnam War and Operation Desert Storm, and had worked steadily as a truck driver for the thirteen years since his honorable discharge, had no prior criminal record. During the evidentiary hearing, the Petitioner testified that his primary objective in pleading guilty to the charges was to persuade the trial court to grant an alternative sentence. He contended that his trial counsel had made a promise "to fight for a lifetime of probation." While acknowledging that he was aware the Assistant District Attorney, Tracy Stone, would argue for a sentence of confinement, the Petitioner nevertheless maintained that he anticipated a probationary sentence based upon his conversations with trial counsel. As support for that contention, the Petitioner testified that he had rejected an initial offer for concurrent sentences of eight years, the minimum possible, because the State had insisted upon a term of confinement. He claimed that he had not considered subsequent proposals, which also included a period of imprisonment, for the same reason. The Petitioner conceded, however, that he had known the State would not pursue additional criminal charges of the same nature if he pled guilty to each of the five counts.

Trial counsel testified for the State. When asked about the specific advice he had provided to the Petitioner regarding the possibility of serving time in prison, trial counsel stated as follows:

> I explained ... that at that time the law ... stated that if you have a sentence of one day over eight years, that you had to serve that in the Department of Correction[ ]. I explained ... that this was one of those Class B felonies that if he were sent to prison, that ... would be 100 percent to serve with no more than 15 percent taken off for good time credit. *If he received a sentence of eight years, then he would be eligible for alternative sentencing[ ]. And I explained those options to him."

(Emphasis added.)

Trial counsel confirmed that the Petitioner rejected the State's initial offer of an eight-year sentence at one hundred percent confinement in the Department of Correction. He admitted that when the State subsequently proposed concurrent, eight-to-twelve-year sentences on each count with the trial court to determine the actual length of each term and the manner of service, he advised the Petitioner that although "[t]here was no guarantee of probation," the applicable law did permit an alternative sentence. Trial counsel reiterated his understanding of the law as follows: "If the Court would have given [the Petitioner] an eight-year sentence, then the Court could have considered alternative sentencing for Mr. Grindstaff. Any-

thing one day over eight years would ... have been a Department of Correction[ ] sentence. I advised him of that." According to trial counsel, the Petitioner also rejected this second offer and the matter was scheduled for trial. When the State learned of allegations made against the Petitioner by another female victim, apparently his granddaughter, it withdrew the offer of concurrent sentencing, but proposed the minimum eight-year terms on each of the five counts; this third proposal would have permitted the trial court to determine not only the manner of service but also whether the sentences would be served concurrently or consecutively. Upon receiving this final offer, trial counsel sent a letter to the Petitioner that included the following language:

> Please be advised that ... ADA T. Stone ... has made the following offer on your case. Upon a plea ... to the five (5) counts ... the state would recommend eight (8) years on each count. A sentencing hearing would be held to determine how that sentence would be served. The State would be free to argue for jail time and even consecutive sentencing on each count due to different dates. *We can argue for probation or community corrections (CC). As I told you before, any sentence eight (8) years or less can be placed on alternative sentencing (i.e. probation).* Anything over eight (8) years must be served in the department of correction[ ]. Please note that because the offer is eight (8) years on each count, the Court could sentence you to some consecutive sentencing; but *because it is only 8 years on each, they can give you probation or community corrections for*

that (i.e. 16 years or even the maximum of 40 years on probation or CC). Also, if the Court ordered you to serve your sentence in the DOC, then it must be at 100% (no more than 15% taken off for good time credit) due to the nature of the offense (as we discussed previously).[5]

(Emphasis added.)

In the letter, trial counsel also informed the Petitioner that the State had agreed not to pursue additional charges relating to the Petitioner's granddaughter if the Petitioner accepted the proposed plea agreement. Trial counsel testified that he thoroughly explained the nature of an open plea to the Petitioner.

Trial counsel, who understood that the Petitioner "did not want to go to jail," informed the Petitioner that he could present mitigating evidence in order to establish his candidacy for probation, alternative sentencing options, or sentence reductions. It was trial counsel's belief that the Petitioner ultimately elected to enter an open plea to all charges, even though it included the possibility of jail time, for two reasons: "[b]ecause he had no defense" and because Assistant District Attorney Stone "was adamant [and] would not agree to ... probation." Trial counsel stated that "the only way that I could see [the Petitioner] having the possibility of alternative sentencing [was] to come in, accept the responsibility for what he had done, plead guilty and have a sentencing hearing, and we would argue for it." It was trial counsel's opinion that "[i]f anybody would have gotten alternative sentencing[ ] with this type of charge, it would have been [the Petitioner]," be-

---

5. Under Tennessee Code Annotated section § 40–35–501(i)(1) and (i)(2)(H) (2003), an individual who is convicted of aggravated sexual battery is required to serve one hundred percent of the sentence. Although the sentence may be reduced for good institutional behavior, as defined by Tennessee Code Annotated section 41–21–236 (2003), such reduction may not exceed fifteen percent of the sentence.

cause of his military service, his work history, and his lack of a criminal record. Trial counsel expressed his belief that the mitigating evidence he submitted on the Petitioner's behalf "provided enough information for the Court, that if the Court wanted to give him alternative sentencing, . . . that was possible."

As to the Petitioner's alternative claim of ineffective assistance, trial counsel acknowledged that the sentencing hearing was not held within forty-five days, as required by statute. He contended, however, that the Petitioner was not prejudiced in any way by the delay.

At the conclusion of the proof, the trial court accredited the testimony of trial counsel and denied post-conviction relief, ruling that the Petitioner had not been deprived of the effective assistance of counsel.[6] The trial court further found that the requirement that the sentencing hearing take place within forty-five days existed "for guidance rather than for any other purpose," and, at any rate, because the Petitioner had failed to produce evi-

dence that he had been prejudiced by the delay in the sentencing hearing, no relief was warranted.[7]

On appeal, the Court of Criminal Appeals affirmed the denial of relief, but specifically found that because of the nature of his crimes and the applicable law, the Petitioner was ineligible for an alternative sentence. *State v. Grindstaff,* No. E2007–02377–CCA–R3–PC, 2008 WL 3895926, at *7 (Tenn.Crim.App. Aug.21, 2008). Because trial counsel's advice to the Petitioner "that he could possibly receive an alternative sentence if he pled guilty . . . contradicted an applicable and relevant statute that was important to his client's case," the performance of trial counsel fell below the range of professional competence required in criminal cases. *Id.* Nevertheless, because nothing in the record "clearly" indicated that the Petitioner, if properly advised, would have either accepted the earlier, more favorable plea offer or elected to proceed to trial, the Court of Criminal Appeals found no preju-

---

**6.** The trial court made the following observation to the Petitioner: "You're 57 years old now. . . . [Y]ou had everything in the world going for you: a good job, a good record, a clean criminal slate, [and] a military record without a blemish. . . . And low and behold, whatever it is that causes these things to happen, it happened. . . . The only thing I can say is that you had as good a[ ] counsel as could possibly be had. . . . "

**7.** On a number of occasions, the Court of Criminal Appeals has considered whether a delay in the sentencing hearing beyond forty-five days entitles a defendant to some form of relief. In *State v. Jones,* 729 S.W.2d 683 (Tenn.Crim.App.1986), the leading case on the subject, the defendant claimed that his sentence should be overturned because the sentencing hearing was delayed by three days (the version of section 40–35–209 in effect at that time required the sentencing hearing to be held within thirty days). The Court of Criminal Appeals ruled as follows:

First, no prejudicial error requiring appellate reversal occurred with regard to this issue inasmuch as the delay in sentencing amounted to only three days. Secondly, it is the general rule in Tennessee that statutory provisions which relate to the mode or time of doing an act to which the statute applies are not to be mandatory, but directory only. Thirdly, without a showing by the appellant of resulting prejudice, any error must be harmless.

*Id.* at 685 (citations omitted). *See also State v. Forster,* M2002–00008–CCA–R3–CD, 2003 WL 1715922, at *12 (Tenn.Crim.App. Apr.1, 2003); *State v. Brooks,* No. W2001–02478–CCA–R3–CD, 2002 WL 818239, at *5 (Tenn. Crim.App. Apr.26, 2002); *State v. Fields,* No. 01C01–9512–CR–00414, 1998 WL 79917, at *7 (Tenn.Crim.App. Feb.26, 1998); *State v. Rankin,* No. 03C01–9511–CC–00369, 1996 WL 469678, at *4–5 (Tenn.Crim.App. Aug.19, 1996).

dice as a result of the deficient performance. *Id.* at *8.

We granted the application for permission to appeal to determine whether trial counsel's erroneous advice as to his eligibility for an alternative sentence denied the Petitioner the effective assistance of counsel.

### Scope of Review and Applicable Law

Claims of ineffective assistance of counsel in post-conviction petitions are regarded as mixed questions of law and fact. *State v. Honeycutt,* 54 S.W.3d 762, 766 (Tenn.2001); *State v. Burns,* 6 S.W.3d 453, 461 (Tenn.1999). Under our statutory law, the Petitioner bears the burden of proving the allegations of fact in his post-conviction petition by clear and convincing evidence. Tenn.Code Ann. § 40–30–110(f); *Dellinger v. State,* 279 S.W.3d 282, 293 (Tenn.2009). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Hicks v. State,* 983 S.W.2d 240, 245 (Tenn. Crim.App.1998). On appeal, the findings of fact made by the trial court will not be disturbed unless the evidence contained in the record preponderates against them. *Brooks v. State,* 756 S.W.2d 288, 289 (Tenn.Crim.App.1988); *Clenny v. State,* 576 S.W.2d 12, 14 (Tenn.Crim.App.1978). When reviewing the application of law to the post-conviction court's factual findings, our review is de novo, and the post-conviction court's conclusions of law are given no presumption of correctness. *Dellinger,* 279 S.W.3d at 293; *Fields v. State,* 40 S.W.3d 450, 457–58 (Tenn.2001).

In this instance, the Petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel as guaranteed by the Sixth Amendment to the United States Constitution. *See* U.S. Const. amend. VI; *Cuyler v. Sullivan,* 446 U.S.

335, 344, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). If he is able to prove the fact of his trial counsel's alleged error by clear and convincing evidence, then he must first establish that the error "fell below an objective standard of reasonableness." *Dellinger,* 279 S.W.3d at 293 (quoting *Strickland v. Washington,* 466 U.S. 668, 687–88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). In other words, the services rendered or the advice given must have been below "the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose,* 523 S.W.2d 930, 936 (Tenn.1975). Secondly, the Petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* The question for the post-conviction court, therefore, is whether there is a reasonable probability that, absent the errors, the result would have been different. *Id.* at 695, 104 S.Ct. 2052. Should the Petitioner fail to establish either counsel's deficient performance or the resulting prejudice, he is not entitled to relief. This Court has interpreted the standard of review as follows:

> Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the defendant makes an insufficient showing of one component.

*Goad v. State,* 938 S.W.2d 363, 370 (Tenn. 1996) (citing *Strickland,* 466 U.S. at 697, 104 S.Ct. 2052).

When a petitioner claims ineffective assistance of counsel in relation to a guilty plea, as in this instance, he or she

must prove that counsel performed deficiently and "there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); *see also McMann v. Richardson*, 397 U.S. 759, 770–71, 90 S.Ct. 1441, 25 L.Ed.2d 763(1970).[8] The primary consideration is whether the deficiency in performance "affected the outcome of the plea process." *Hill*, 474 U.S. at 59, 106 S.Ct. 366. The petitioner is not, however, required to demonstrate that he would have fared better at trial than by a plea of guilt. *Id.* at 59–60, 106 S.Ct. 366.[9]

## Analysis

### I

At the outset, we must acknowledge that the Petitioner was not eligible for probation. The statute governing eligibility for probation specifically excludes those convicted of aggravated sexual battery and other crimes:

A defendant shall be eligible for probation under the provisions of this chapter if the sentence actually imposed upon such defendant is eight (8) years or less; *provided, that a defendant shall not be eligible for probation under the provisions of this chapter if the defendant is convicted of a violation of ... § 39–13–504.*

Tenn.Code Ann. § 40–35–303(a) (2003) (emphasis added).[10] Moreover, the Petitioner was not eligible for a community corrections sentence. The Community Corrections Act is designed for nonviolent felony offenders. Tenn.Code Ann. § 40–36–106(a)(1)(C) (2003). Our statutory scheme specifically excludes crimes involving sexual contact from the definition of a non-violent felony offense. See Tenn.Code Ann. § 40–36–102(11) (2003) (defining a "nonviolent felony offender," in part, as "a person committing a felony offense ... that ... does not involve sexual contact ... as ... defined in § 39–13–501[ (6) ]"); Tenn.Code Ann. § 39–13–504(a)(4) (2003) (providing the relevant definition of aggra-

8. In *Harris v. State*, 875 S.W.2d 662, 667 (Tenn.1994), this Court ruled that when a petitioner is denied effective assistance by trial counsel's failure to communicate a plea bargain offer and to timely respond as required by its terms, the appropriate remedy is to remand the cause to the trial court and direct the State to reinstate the original guilty plea offer and negotiate in good faith. If the offer is acceptable to the defendant, the trial court may exercise its discretion to either accept or reject the plea agreement; otherwise, the case should stand for trial. *Id.*

9. In *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), the United States Supreme Court ruled that in three circumstances, there is a presumption that counsel's performance is prejudicial. The first is when "the accused is denied counsel at a critical stage of his trial." *Id.* at 659, 104 S.Ct. 2039. The second is when "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing." *Id.* The

third is when circumstances are such that "although counsel is available to assist the accused during trial, the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate." *Id.* at 659–60, 104 S.Ct. 2039. *See also Bell v. Cone*, 535 U.S. 685, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); *Mitchell v. Mason*, 325 F.3d 732, 741–742 (6th Cir.2003); *Wallace v. State*, 121 S.W.3d 652 (Tenn.2003) (holding that trial counsel's failure to file a motion for new trial was deficient and presumptively prejudicial for failure to subject the state's prosecution to appellate scrutiny).

10. The 2005 amendment to the Criminal Sentencing Reform Act of 1989 increased the minimum sentence for probation eligibility from eight years to ten years. *See* Tenn.Code Ann. § 40–35–303(a) (2006). Nevertheless, a defendant convicted of aggravated sexual battery is still ineligible for probation under the amended statute.

vated sexual battery as being "unlawful sexual contact" with a victim younger than thirteen). Further, to be eligible for community corrections under Tennessee Code Annotated section 40–36–106(c), a defendant must first be eligible for probation under Tennessee Code Annotated section 40–35–303. *State v. Staten*, 787 S.W.2d 934, 936–37 (Tenn.Crim.App.1989). Thus, the Petitioner did not, as a matter of law, qualify for a probationary or community corrections sentence upon the entry of his pleas of guilt.

## II

■ Next, we observe that the Petitioner, in his pro se petition for post-conviction relief, challenged his guilty pleas only in the context of his claim of ineffective assistance of counsel. Neither the original petition nor the amended petition, filed by post-conviction counsel after his appointment in this case, specifically alleged that the Petitioner was entitled to relief because his guilty pleas to the charges, which were made absent accurate information as to the potential sentence, failed to meet constitutional standards. In consequence, the post-conviction court was not called upon to determine whether the guilty pleas were voluntarily, understandingly, and knowingly made, as required by our federal and state constitutions. *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); *State v. Neal*, 810 S.W.2d 131, 134–35 (Tenn.1991), *overruled*

*in part on other grounds by Blankenship v. State*, 858 S.W.2d 897, 902 (Tenn.1993).

■ In determining whether a guilty plea was knowingly and voluntarily entered, the standard, of course, is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Jaco v. State*, 120 S.W.3d 828, 831 (Tenn.2003) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970)). The trial court may consider several factors in making this determination, including:

> (1) the defendant's relative intelligence; (2) the defendant's familiarity with criminal proceedings; (3) the competency of counsel and the defendant's opportunity to confer with counsel about alternatives; (4) the advice of counsel and the trial court about the charges and the penalty to be imposed; and (5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial.

*Howell v. State*, 185 S.W.3d 319, 330–31 (Tenn.2006) (citing *Blankenship*, 858 S.W.2d at 904). As a means of determining whether a plea is knowingly and voluntarily entered, the courts must "canvass[ ] the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence." *Boykin*, 395 U.S. at 244, 89 S.Ct. 1709; *see also State v. Pettus*, 986 S.W.2d 540, 542 (Tenn.1999).[11]

---

11. Further, before accepting a guilty plea, the trial court has the duty to address the defendant on the record in order to ensure a knowing and voluntary plea. *See Boykin*, 395 U.S. at 243–44, 89 S.Ct. 1709; *Neal*, 810 S.W.2d at 135–36; *see also* Tenn. R.Crim. P. 11(b). In *Boykin*, the United States Supreme Court held that the trial court must question the defendant to ensure that he understands that by entering the plea he is waiving the privilege against self-incrimination, the right to a jury trial, and the right to confront his accusers. 395 U.S. at 243–44, 89 S.Ct. 1709. Furthermore, in addition to requirements set out in *Boykin*, trial courts in this state must ascertain that the defendant understands (1) the nature of the charge to which the plea is offered and the mandatory minimum and maximum penalty provided by law; (2) the right of the defendant to be represented by counsel at every stage of the proceedings; (3) the right of the defendant to plead not guilty

Of importance is that "[a] ground for relief is waived if a petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented," except in certain circumstances, none of which are present in this case. Tenn.Code Ann. § 40–30–106(g) (2003); *see, e.g., State v. O'Guinn,* 786 S.W.2d 243, 246–47 (Tenn.Crim.App.1989). Furthermore, the plain error rule, which would otherwise permit an appellate court to address the issue sua sponte, may not be applied in post-conviction proceedings to grounds that would otherwise be deemed either waived or previously determined.[12] *State v. West,* 19 S.W.3d 753, 756–57 (Tenn.2000). Finally, a post-conviction petitioner is not entitled to the effective assistance of counsel. *House v. State,* 911 S.W.2d 705, 712 (Tenn.1995); *State v. Garrard,* 693 S.W.2d 921, 922 (Tenn.Crim.App.1985). Thus, the failure of appointed counsel to amend a post-conviction petition to include what might otherwise qualify as a meritorious ground for relief is not a basis to set aside a conviction. *House,* 911 S.W.2d at 712.

### III

Now, having determined that the Petitioner, while not properly informed as to the applicable law before he pled guilty to each charge, has waived any possible entitlement to have the pleas set aside on grounds that they were not knowingly and intelligently made, we turn to the claim of ineffective assistance of counsel. Trial counsel, who submitted mitigating evidence and argued at the sentencing hearing for imposition of an alternative sentence, obviously did not know that the crimes to which the Petitioner had pled guilty precluded any consideration of probation or community corrections. Neither

and to persist in that plea, the right to a jury trial, the right to assistance of counsel at trial, the right to confront and cross-examine witnesses against him, and the right against compelled self-incrimination; (4) that by pleading guilty or nolo contendere, the defendant waives the right to a trial; and (5) that if the defendant enters a guilty or nolo contendere plea, the trial court may question the defendant regarding the offenses and that any of the defendant's answers made under oath, on the record, and in counsel's presence may later be used against the defendant in a subsequent prosecution for perjury or false statement. Tenn. R.Crim. P. 11(b)(1)(A)-(I); *Neal,* 810 S.W.2d at 135–36. The defendant also must be advised that additional punishment may result from his guilty plea by reason of his prior convictions or other factors and that the resulting conviction may be used against him to enhance his punishment for subsequent convictions. *Neal,* 810 S.W.2d at 136. Literal compliance with the advice to be given by the trial court is not required. *Id.* at 137. Rather, the trial court must substantially comply with these mandates. *Id.; State v. Newsome,* 778 S.W.2d 34, 38 (Tenn.1989). Substantial compliance does not constitute error.

*Neal,* 810 S.W.2d at 138. "Where there is substantial compliance the root purpose of the prescribed litany has been served and the guilty plea passes due process scrutiny because it was made voluntarily and understandingly." *Id.*

12. An appellate court may take up an issue that has been waived if the issue constitutes a "plain error" that affects the substantial rights of a party and consideration of the issue is necessary to do substantial justice. Tenn. R.App. P. 36(b). Courts in Tennessee consider five factors when deciding whether an error constitutes plain error:

(a) the record must clearly establish what occurred in the trial court; (b) a clear and unequivocal rule of law must have been breached; (c) a substantial right of the accused must have been adversely affected; (d) the accused did not waive the issue for tactical reasons; and (e) consideration of the error is "necessary to do substantial justice."

*State v. Smith,* 24 S.W.3d 274, 282 (Tenn. 2000) (quoting *State v. Adkisson,* 899 S.W.2d 626, 641–42 (Tenn.Crim.App.1994)).

did the trial court nor the assistant district attorney who prosecuted the case make any statements at either the submission hearing or the sentencing hearing to clarify this misconception. Because trial counsel erroneously advised the Petitioner that he might receive an alternative sentence upon pleas of guilt to the charges in the indictment, the Court of Criminal Appeals concluded that the performance of trial counsel did not meet the minimum level of competence demanded in criminal cases. We agree.

■ There are no specific guidelines for determining whether trial counsel's performance was deficient other than that the assistance of counsel must meet "an objective standard of reasonableness." *Strickland*, 466 U.S. at 688, 104 S.Ct. 2052. The quality of the representation "relies . . . on the legal profession's maintenance of standards sufficient to justify the . . . presumption that counsel will fulfill the role in the adversary process that the [Sixth] Amendment envisions." *Id.* The American Bar Association Standards for Criminal Justice provide guidelines which are often helpful in the assessment of the performance of defense counsel, some of which apply to these circumstances:

*Standard 4–5.1(b)*

Defense counsel should not intentionally understate or overstate the risks, hazards, or prospects of the case to exert undue influence on the accused's decision as to his or her plea.

*Standard 4–6.1(b)*

Defense counsel may engage in plea discussions with the prosecutor. *Under no circumstances should defense counsel recommend to a defendant acceptance of a plea unless appropriate investigation and study of the case has been completed, including an analysis of controlling law and the evidence likely to be introduced at trial.*

*Standard 4–8.1(a)*

*Defense counsel should, at the earliest possible time, be or become familiar with all of the sentencing alternatives available to the court and with community and other facilities which may be of assistance in a plan for meeting the accused's needs.* Defense counsel's preparation should also include familiarization with the court's practices in exercising sentencing discretion, the practical consequences of different sentences, and the normal pattern of sentences for the offense involved, including any guidelines applicable at either the sentencing or parole stages. The consequences of the various dispositions available should be explained fully by defense counsel to the accused.

ABA Standards for Criminal Justice: Prosecution and Defense Function (3d ed. 1993), *available at* http://www.abanet.org/crimjust/standards/&1Fdfunc_toc.html (emphasis added).

The Sixth Circuit Court of Appeals has also provided some guidance as to when defense counsel's failure to apprise the accused of the consequences of a guilty plea might constitute objectively deficient performance under *Strickland*. In *United States v. Morris*, 470 F.3d 596, 603 (6th Cir.2006), that court ruled that when the prosecutor provided an erroneous estimate under the federal sentencing guidelines and Morris' counsel, who was appointed shortly before the State made its plea bargain offer and without adequate time to prepare, had no knowledge of their provisions, Morris had been denied the effective assistance of counsel under both the *Hill v. Lockhart* and the *United States v. Cronic* standards. Secondly, in *Miller v. Straub*, 299 F.3d 570, 580–81 (6th Cir. 2002), the same court observed that "counsel must ensure that the client's decision is as informed as possible. Failing even to

consider, let alone notify the client of, a factor that could negate the entire benefit of the guilty plea is not within the range of professional norms." The Sixth Circuit granted habeas corpus relief because the evidence had established "a probability[,] sufficient to undermine confidence in the outcome," that the defendant would not have pled guilty had he been properly advised of the prosecutor's right of appeal. *Id.* at 581 (citing *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052). Finally, in *Moss v. United States,* 323 F.3d 445, 474 (6th Cir. 2003), the court stated that the failure of counsel to "provide professional guidance ... regarding ... sentence exposure prior to a plea may constitute deficient assistance." *See also Magana v. Hofbauer,* 263 F.3d 542, 550 (6th Cir.2001) (holding that defense counsel's erroneous advice concerning sentence exposure "fell below an objective standard of reasonableness under prevailing professional norms").

 The evidence in this record demonstrates that at the time of his pleas, the Petitioner was misinformed as to his eligibility for an alternative sentence. Further, he was unaware of the mandatory nature of his sentences, not only during the course of the plea negotiations and at the time of his guilty pleas, but also during his sentencing hearing and throughout his direct appeal to the Court of Criminal Appeals. Criminal defense attorneys must conduct adequate legal research in order to meet the required range of competence. *See, e.g., Cooper v. State,* 847 S.W.2d 521,

527–28 (Tenn.Crim.App.1992). Because trial counsel failed to ascertain the status of the law and failed to inform the Petitioner that he was not eligible for an alternative sentence, his performance was deficient.

 In order to prevail on this ineffective assistance claim, however, the Petitioner must not only establish deficiency in the performance of his trial counsel, he must also establish prejudice. That is, the evidence, clearly and convincingly established, must demonstrate a reasonable probability that counsel's deficient performance was so serious as to undermine confidence in the outcome of the proceedings. *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052; *Henley v. State,* 960 S.W.2d 572, 579 (Tenn.1997).[13] Because the Petitioner is claiming that trial counsel provided ineffective assistance in connection with his guilty pleas, he must show a reasonable probability that, but for trial counsel's deficient performance, "he would not have pled guilty and would have insisted on going to trial." *Hill,* 474 U.S. at 59, 106 S.Ct. 366.

 This Court has defined clear and convincing evidence as that which leaves "no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Hodges v. S.C. Toof & Co.,* 833 S.W.2d 896, 901 n. 3 (Tenn.1992). The Court of Criminal Appeals has applied the *Hodges* standard in the post-conviction setting. *Hicks,* 983 S.W.2d at 245.[14] Moreover, a conviction

---

**13.** Some courts have held that a petitioner must support his own assertion that he would have accepted the offer absent the deficiency in performance with additional objective evidence. The Sixth Circuit has declined to adopt such a requirement. *Griffin v. United States,* 330 F.3d 733, 737–38 (6th Cir.2003) (quoting *Dedvukovic v. Martin,* 36 Fed.Appx. 795, 798 (6th Cir.2002)); *see also Smith v.*

*United States,* 348 F.3d 545, 551 (6th Cir. 2003).

**14.** In contrast, clear and convincing evidence in the parental termination context has been established when "the truth of the facts asserted is highly probable," *In re Marr,* 194 S.W.3d 490, 496 (Tenn.Ct.App.2005), and when any serious or substantial doubt about the correctness of the conclusions drawn

for a criminal offense, which demands the most stringent standard of proof, may be based entirely upon circumstantial evidence. *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn.2009). In every regard, circumstantial evidence is entitled to the same status as direct evidence. *Cf. State v. Sutton*, 166 S.W.3d 686, 689 (Tenn.2005); *State v. Brown*, 551 S.W.2d 329, 330–31 (Tenn.1977). The same, of course, is true in the post-conviction setting. Either direct or circumstantial evidence, or a combination of both, may be sufficient to meet the clear and convincing standard.

In *Hill v. Lockhart*, the Supreme Court, while establishing the applicable standard in the context of guilty pleas, denied relief in part because Hill, who had been misinformed as to the date of his parole eligibility, "alleged no special circumstances that might support the conclusion that he placed particular emphasis on his parole eligibility in deciding whether or not to plead guilty." 474 U.S. at 60, 106 S.Ct. 366. This case is different. At the evidentiary hearing, trial counsel, still not cognizant of the fact that the nature of the convictions precluded an alternative sentence, corroborated the Petitioner's claim that his rejection of prior offers by the State, all of which demanded a period of confinement, were based upon his hope to avoid a sentence of incarceration. While on bail throughout the period of time from his arrest until his sentencing hearing, the Petitioner continued to make deliveries by truck throughout the region; this supports his testimony that he had scheduled another out-of-state delivery on the day following the sentencing hearing in anticipation of an alternative sentence. On two different occasions during this period of time, the Petitioner turned down offers by the State which demanded at least eight years of confinement in prison. One of those proposals provided for concurrent service for each of the offenses at the minimum term permitted by statute. In our view, the record demonstrates a reasonable probability that if trial counsel had adequately researched the applicable law and informed the Petitioner that alternative sentencing was not available, he would not have entered an open plea of guilt to the several counts in the indictment. Under these circumstances, the Petitioner is entitled to post-conviction relief.

### Conclusion

The record demonstrates by clear and convincing evidence that the performance of trial counsel fell below the range of competence required in criminal cases. The evidence in the record also establishes a reasonable probability of prejudice, because the Petitioner's "ability to make an intelligent decision regarding [the] plea offer[s][was] severely undermined." *Morris*, 470 F.3d at 603 (quoting *United States v. Morris*, 377 F.Supp.2d 630, 638 (E.D.Mich. 2005)). The standards established in *Strickland* and *Hill* require that the convictions be set aside and the cause be remanded for trial.[15] Because the Petitioner was denied the effective assistance of counsel, the Court of Criminal Appeals

---

from the evidence has been eliminated. In *re K.B.H.*, 206 S.W.3d 80, 84 (Tenn.Ct.App. 2006); *see also In re A.D.A.*, 84 S.W.3d 592, 596 (Tenn.Ct.App.2002) (quoting *In re C.W.W.*, 37 S.W.3d 467, 474 (Tenn.Ct.App. 2000) ("Such evidence should produce in the fact-finder's mind a firm belief or conviction as to the truth of the allegations sought to be established.")).

15. We recognize that the Petitioner did not receive the maximum possible sentence upon his pleas of guilt. Further, he may face other charges upon remand, as indicated by our recitation of facts.

is reversed and judgments of conviction are vacated. The cause is remanded for trial on the original charges. Costs of this appeal are taxed to the State of Tennessee.