IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 27, 2012

**JAMES G. COONS, II v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Davidson County**
**No. 2008-B-893    Cheryl A. Blackburn, Judge**

**No. M2012-00529-CCA-R3-PC - Filed May 21, 2013**

James G. Coons, II ("the petitioner") filed for post-conviction relief from his open plea of guilty to the lesser included offense of Second Degree Murder and received a maximum Range II sentence of 40 years in the Department of Correction. Specifically, he asserts that counsel did not investigate or prepare for trial properly or advise him properly as to the possibilities of sentencing. The petition was denied and this appeal followed. Upon a thorough review of the record, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

CHRISTOPHER CRAFT, SP. J., delivered the opinion of the Court, in which ROBERT W. WEDEMEYER and CAMILLE R. MCMULLEN, JJ., joined.

Ryan C. Caldwell, Nashville, Tennessee, for the appellant, James G. Coons, II

Robert E. Cooper, Jr., Attorney General and Reporter; Meredith DeVault, Senior Counsel; Victor S. Johnson, III, District Attorney General; and Katrin Miller, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

BACKGROUND

The petitioner, James G. Coons, II, appeals the denial of his petition for post-conviction relief. He was indicted April 11, 2008, for the premeditated murder of his wife, Rebecca Ollis Coons, and entered a plea of guilty on February 7, 2009, to the lesser included offense of Second Degree Murder, with the trial court to determine his sentence after a sentencing hearing. He received the maximum sentence of 40 years as a Range II offender in the Department of Correction. The petitioner appealed that sentence, contending that the trial court did not adequately consider his mental health as a mitigating factor in his

punishment. His sentence was affirmed in *State v. James G. Coons, II*, 2010 Tenn. Crim. App. LEXIS 459, No. M2009-01361-CCA-R3-CD (Tenn. Crim. App. June 4, 2010)*, perm. app. denied* (Tenn. 2010). Much aggrieved, he has timely filed the instant petition for post-conviction relief, alleging that his trial attorney failed to render him effective assistance of counsel in two respects: failing to prepare for trial properly, and improperly advising him as to the probable sentence he would receive as a result of his entering an open plea of guilty to Second Degree Murder. As a consequence of this ineffective assistance, he alleges that his plea of guilty was not a knowing and voluntary plea.

FACTS OF THE CASE AS ADDUCED AT SENTENCING

In assessing trial counsel's performance, we must take into account the facts available to him prior to the petitioner's decision to enter his plea of guilty, as set out by the Court of Criminal Appeals in affirming the petitioner's sentence:

> This case arises from the [petitioner's] fatal stabbing of his wife, with whom he had a history of domestic violence. The [petitioner's] presentence report contains the following account of the events leading up to and following the victim's death:
>
> > On 11/09/07 the victim, Rebecca Coons, returned home from work and ended up getting into an argument with her husband, [the petitioner]. The argument started because [the petitioner] wanted to use the victim's truck to go get his new medication. The victim did not want [the petitioner] to drive her truck because he did not have a license. The argument went on for some time and [the petitioner] got angry. During the interview [the petitioner] stated that he blacked out and didn't remember stabbing the victim, but she was stabbed/cut 22 times and died at the scene. The suspect called his mother, Donna Coons. He told her that he had hurt his wife and that she needed to check on her. Donna Coons woke up her other son, Thomas Coons and both came to the Bell Road apartment. When they arrived, [the petitioner] let them into the apartment. Thomas check[ed] the victim's pulse and found that she did not have one. [The petitioner] called mobile crisis and 911, while Thomas was still inside. Thomas and Donna Coons left [the] apartment and waited for the police. When Officer Shaw arrived, Thomas and Donna Coons told him that the [petitioner] had stabbed the victim and that she was dead. Shaw went into the apartment to check on the victim and saw that E.M.S. was working on the victim. He exited the apartment and was followed outside by [the petitioner]. The [petitioner] was still talking to mobile crisis when Shaw asked him what had happened. He stated that he had stabbed her. He was placed under arrest by Officer Shaw. E.M.S. did not transport the victim to the hospital. The suspect's family members gave written and taped statements . . . while at the

scene. The [petitioner] was transported to the station where he signed a Miranda rights waiver during a video taped interview. He stated that he did not remember stabbing the victim, but he assumed he did. He stated that he blacked out during the argument. When he "awoke" she was lying on the floor "hurt," as he put it. He then [said] that he did call his mother to come check on her. The [petitioner] was arrested and charged with criminal homicide. The victim and the suspect have had a turbulent marriage, with several domestic violence allegations being made by the victim. To quote the victim's stepfather, "This doesn't surprise me at all."

Based upon this conduct, a Davidson County grand jury indicted the [petitioner] for first degree premeditated murder, and the [petitioner] subsequently pled guilty to second degree murder.

Following entry of the [petitioner's] guilty plea, the trial court held a sentencing hearing wherein the following evidence was presented: According to the presentence report, the [petitioner], who was thirty-seven when he killed the victim and thirty-eight at sentencing, dropped out of school at age thirteen. He began to use alcohol and marijuana at age sixteen and did not stop until his mid-thirties. He has been diagnosed with bi-polar and anti-social disorders, which were being treated with the medications Gedeon and Remeron. He attended counseling at Cornerstone from 2000 to 2001 and was admitted to Vanderbilt Hospital for depression in 2006. Since 2003, he had received Supplemental Security Income based upon his diagnosis of depression. The [petitioner] had three children from two previous marriages.

The [petitioner's] criminal record indicated he had over twenty convictions, including: four convictions for assault, four convictions for driving with a suspended or revoked license, two convictions for criminal impersonation, two convictions for theft between $ 500 and $ 1000, and one conviction each for failure to appear, aggravated assault, kidnapping, reckless driving, a weapons offense, theft under $500, resisting arrest, burglary, and manufacture of a Schedule I hallucinogen.

The victim's daughter submitted a letter describing how the victim's relationship with the [petitioner] alienated the victim from her family. The letter recounts several occasions on which the victim's daughter observed the [petitioner] strike and threaten the victim.

At the hearing, Dr. Stacy Turner, an assistant medical examiner for the Tennessee State Medical Examiner's Office, testified she performed the victim's autopsy. Dr.Turner testified that the victim was thirty-five when she died and that she was otherwise healthy. The victim's cause of death was multiple sharp force injuries. Her body bore twenty-two sharp force injuries, fourteen of which would have been fatal alone. The stab wounds appeared on the victim's upper back and on her left anterior chest and breast. She also had several scrapes on her right knee and multiple

bruises and scrapes on her left knee. Finally, the victim also had multiple defensive injuries to her hands and arms. Dr.Turner testified that the injuries to the victim's hands and arms are consistent with injuries received from assuming a defensive position during an attack.

Dr. Turner said the maximum depth of the victim's stab wounds was five inches and that a kitchen-type knife likely caused her injuries. The victim had bilateral hemathoraces, the presence of collected blood in the chest and lungs. She likely died from her injuries in only a few minutes, and, due to the severity of her wounds, would not have survived with immediate medical attention.

Linda Streicher, the victim's mother, testified that she was aware that the [petitioner] was physically abusing the victim. The victim had told her mother she was planning to leave the [petitioner] and was considering moving in with either a friend from school or her half-sister who lived in Florida. Streicher said her daughter had graduated with a degree in criminal justice a few months before her death. Due to her experience with the [petitioner], the victim planned to work with juveniles and with domestic violence.

Streicher explained that the [petitioner's] behavior toward her daughter had affected their family in several ways: the victim's daughter moved to East Tennessee in order to escape the [petitioner] whom she feared because of his violent behavior toward her mother. The victim's father felt guilty for not saving the victim from the [petitioner], and he began to experience depression. The victim's son, from whom the victim was estranged, refused to mention his mother after her death.

The [petitioner] offered the following allocution statement: "I just wanted to say I'm sorry for what I did, but I tried to get some help a couple of days before it. And they let me go. And then I was out on some Klonopins. That's what made me forget what happened."

At the conclusion of the hearing, the trial court applied four enhancement factors and one mitigating factor, and it sentenced the Defendant to forty years in the Tennessee Department of Correction.

*State v. Coons*, 2010 Tenn. Crim. App. LEXIS 459, at **1-4.

## PROOF AT THE POST-CONVICTION HEARING

The petitioner testified at the hearing on his petition, as his only witness, that when he was first arrested he had only been charged with "criminal homicide," and not Murder First Degree. He only met with his attorney twice, and his family had hired trial counsel because he had originally told him that he would receive no more than a six year sentence, but that if he went to trial, he was looking at "life or death." He stated he only had a third grade education, and he testified that he wanted his attorney to file a motion to suppress his two statements to the police because he did not remember giving a statement and knew they

did not read him his *Miranda* rights. He could not remember, however, whether he had mentioned this to his attorney, and a motion to suppress was never filed.

The petitioner testified that on the day of the guilty plea, when he signed the plea petition it was blank. His attorney told him that if he signed it he would probably get 15 years.[1] When asked why he told the trial judge during the guilty plea voir dire that he understood the terms of the plea if he in fact did not, he stated rather cryptically that it was because "if you make a deal, you can't say you made a deal because they won't let you enter it." He insisted that he didn't understand that he was to receive somewhere between 25 and 40 years in exchange for his plea of guilty, and he could not recall if his attorney reviewed his criminal record with him or told him that record would have an adverse effect on his sentence. His attorney had made sure he had been mentally evaluated, and he had been found to be competent. To his knowledge, his attorney interviewed no witnesses, but he did not request that he do so, or ask that he employ a private investigator. Finally, when asked what it was about his attorney's representation that he found to be deficient, the petitioner stated, "I don't know."

On cross-examination, the petitioner stated that he did not commit the murder; that some other woman in the police report did. He also did not remember giving a statement to the police taking responsibility for the crime. He also admitted that he met with his attorney several times: after his arrest, at the preliminary hearing, at his arraignment after indictment, at a 404(b) hearing when witnesses were called to testify about prior bad acts of violence he committed towards the victim and again prior to his guilty plea. He stated that they had met "I know two or three times I can't remember exactly how many times."

The petitioner's trial attorney was called by the State as its only witness at the hearing. He testified that he had been a criminal defense attorney since 2006, and had handled several homicide, murder and attempted homicide cases. He met with the petitioner 5 to 6 times at the courthouse and 4 to 5 times in jail. He also handled the preliminary hearing. His explanation for the petitioner's reference to an initial six year offer to the homicide was that the petitioner was possibly referring to an early conversation he had with the petitioner in which he went over the petitioner's possible ranges of punishment for murder first degree, murder second degree and voluntary manslaughter. As the petitioner was a Range II offender, he had explained to him that if the proof came in a certain way and he were convicted of voluntary manslaughter that he could receive a minimum of 6 to 10 years. He filed a motion to suppress the petitioner's statements to the police, but he decided not to have a hearing on the motion as he found it meritless after talking to the officers involved and the petitioner's mother and brother. He discussed this decision with the petitioner, who agreed. The petitioner had been Mirandized prior to the statement. The attorney testified that he did

---

[1]A Range I offender's sentencing range would be from 15 to 25 years on Second Degree Murder, a Class A felony. As the petitioner was Range II, his correct sentencing range would be from 25 to 40 years.

not hire a private investigator because he interviewed all the witnesses himself. He also had a lengthy Tenn. R. Evid. 404(b) hearing on the petitioner's history of violence against the victim, at which the trial judge found the evidence admissible.

Shortly before trial, the State offered to allow the petitioner to plead guilty to Second Degree Murder and let the trial judge determine the sentence after a sentencing hearing, and his attorney "thought some conditions existed that might allow the Court to give him less than the maximum, which is obviously less than what he would have gotten had he gone to trial and lost on first degree." He laid out the petitioner's options, along with input from the petitioner's mother. When the petitioner decided to plead guilty, the waiver form he signed was blank where the agreed sentence would normally be filled in because it was to be determined by the trial court after the sentencing hearing.

On cross-examination, the attorney testified that he was certain the petitioner thought he would get less than 40 years at sentencing when he signed the waiver, which only said "open with a sentencing hearing" where an agreed-upon sentence would normally be. However, even if the petitioner received the maximum sentence, that option would have been better than going to trial. His attorney was asked as follows:

Q. Okay. Is there anything in your mind that you feel [the petitioner] did not understand about what his - - what he was pleading to or what his sentence would be?
A. No. I think the one area I was concerned about with [the petitioner] was that because of his record and because of the violent nature of this offense that I wanted him to understand that going to trial would have been a poor decision. And it took him a while to get to that point. And that's why, as [the prosecutor] indicated, we pled basically right prior to a trial date. And I was concerned - - but when he finally came around to understand it, I felt much more comfortable with it.
Q. Okay.
A. And the effects that the - - this was a big concern and, of course, the hearing on it turned out that the Court was going to allow the 404B evidence in. Once that came in to me that made it even more clear that this was the best decision to make.

As stated above, the petitioner is now asking that his guilty plea be set aside because his trial attorney failed to render him effective assistance of counsel in two respects: in not preparing for trial properly and in improperly advising him as to the probable sentence he would receive as a result of his entering an open plea of guilty to Second Degree Murder. As a consequence of this ineffective assistance, he alleges that his plea of guilty was not a knowing and voluntary plea.

## ANALYSIS

We treat claims of ineffective assistance of counsel in a petition for post-conviction relief as mixed questions of law and fact. *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn.

2009); *State v. Honeycutt*, 54 S.W.3d 762, 766 (Tenn. 2001). To prevail on a claim for postconviction relief, the petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f) (2012); Tenn. Sup. Ct. R. 28 § 8(D)(1); *Grindstaff*, 297 S.W.3d at 216. The post-conviction court's findings of fact are conclusive on appeal unless the evidence in the record preponderates against them. *Grindstaff*, 297 S.W.3d at 216; *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). We review *de novo* the post-conviction court's application of the law to its factual findings, according no presumption of correctness to its conclusions of law. *Grindstaff*, 297 S.W.3d at 216; *Dellinger v. State*, 279 S.W.3d 282, 293 (Tenn. 2009).

## I. Ineffective Assistance of Counsel in Trial Preparation and Investigation

Pursuant to the Sixth Amendment of the United States Constitution, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense." *See also* Tenn. Const. art. I, § 9 ("[I]n all criminal prosecutions, the accused hath the right to be heard by himself and his counsel."). In *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985), the United States Supreme Court held that the two-part test outlined in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) was applicable to challenges of guilty pleas based on ineffective assistance of counsel. To succeed on a claim that his or her legal representation has been constitutionally inadequate, a criminal defendant "must establish both that counsel's performance was deficient and that the deficiency prejudiced the defense." *Vaughn v. State*, 202 S.W.3d 106, 116 (Tenn. 2006) (*citing Strickland v. Washington*, 466 U.S. at 688, and *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)). A defendant's "failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the defendant makes an insufficient showing of one component." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996) (citing *Strickland*, 466 U.S. at 697).

The first prong of this two-prong test is deficient performance. This prong requires the petitioner to prove that "counsel's representation fell below an objective standard of reasonableness" and overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 688-89. The second prong of the test is prejudice. This prong requires the petitioner to prove "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. The definition of "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. When ineffective assistance of counsel is alleged in the context of a guilty plea, the prejudice analysis focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Hill*, 474 U.S. at

59; *See also Grindstaff*, 297 S.W.3d at 216-17.

The petitioner first argues that his attorney failed to adequately investigate his case or prepare for trial. The attorney testified, and the record fully supports, that he personally interviewed all of the witnesses, conducted an extensive Tenn. R. Crim. P. 404(b) hearing on the petitioner's behalf and filed a motion to suppress the petitioner's statements, striking the motion to suppress only when the facts showed that the motion was meritless. A copy of the motion the attorney filed on August 27, 2008, six months before the plea was entered, was entered as Exhibit 3 to the hearing, clearly contradicting the petitioner's testimony that no such motion was filed. It was also uncontradicted at the sentencing hearing, at which the petitioner admitted to and apologized for the killing, that the petitioner had committed the murder and had confessed to it. Although the petitioner is now claiming that a female who was mentioned in a police report committed the killing, he not only failed to produce the name of that person at the hearing on the petition, but also the name of any other witness who might have been able to help in his defense whom his attorney had failed to interview. The petitioner has failed to establish by clear and convincing evidence that his attorney performed deficiently in either his trial investigation or preparation. Moreover, the Petitioner has failed to demonstrate any prejudice to the petitioner as the result of any alleged deficiency. Accordingly, the Petitioner is entitled to no relief on this basis.

## II. Ineffective Assistance of Counsel in Guilty Plea Advice

The petitioner also alleges that he was given improper guilty plea advice by his attorney, and thought that he would be receiving a 15 year sentence rather than a 40 year sentence. He states that he did not understand the terms of the open plea of guilty to Second Degree Murder, and that his attorney improperly advised him as to the probable sentence he would receive as a result of his entering an open plea of guilty to Second Degree Murder. As a consequence of this ineffective assistance, he alleges that his plea of guilty was not knowingly and voluntarily made.

The transcript of the guilty plea reflects that the trial judge clearly explained to the petitioner that by entering that open plea, he was exposing himself to a range of 15 to 40 years in the Department of Correction, and that the petitioner testified that he understood this. There was also a discussion in open court with the prosecutor that although the State contended he was Range II, that fact would be decided by the trial judge at the sentencing hearing. The petitioner acknowledged that the guilty plea petition was read to him by his attorney and that he had no questions about it before he signed it. He also acknowledged that his attorney had done everything he wished him to do in the case. In her order denying the petition for post-conviction relief, the trial judge found credible the trial attorney's testimony that he advised the petitioner of the nature and consequences of the possible outcomes in the case and based on his experience recommended that the petitioner take the open plea to the lesser included offense instead of proceeding to trial. "[T]he post-conviction court's credibility determinations are conclusive on appeal unless the evidence preponderates

against them." *Granderson v. State*, 197 S.W.3d 782, 792 (Tenn. Crim. App. 2006) (citing *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996)). The post-conviction judge also found that the petitioner understood the terms of the plea, which was entered knowingly and voluntarily, and did not accredit the testimony of the petitioner. The proof does not preponderate against the trial court's findings in this regard. Although the petitioner's attorney testified that he felt that the mitigating factor of the petitioner's mental condition should have kept the petitioner from receiving the maximum sentence of 40 years, there has been no credible proof that he ever guaranteed this outcome to the petitioner in exchange for his entering a plea of guilty. When the petitioner received the maximum sentence, the attorney appealed the sentence and did everything he could to have it reduced. However, the fact that the petitioner in fact received the maximum sentence does not render the plea unknowing or involuntary. Courts must not measure counsel's performance by "20-20 hindsight." *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982). Rather, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689; *see also Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996). "[A] reviewing court must be highly deferential and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *State v. Burns*, 6 S.W.3d 453, 462 (Tenn. 1999). In other words, the petitioner "must overcome the presumption that, under the circumstances, counsel's challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689, quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955). In view of the facts surrounding the petitioner's offense, stipulated to during the plea of guilty and contained in the presentence report cited by this court in the opinion affirming the appeal of the petitioner's sentence, the advice given to the petitioner to accept a plea to the lesser included offense of Second Degree Murder appears to fall into the category of "sound trial strategy." Accordingly, the petitioner is entitled to no relief on this issue.

CONCLUSION

For the reasons set forth above, we affirm the judgment of the post-conviction court.

_____
CHRISTOPHER CRAFT, SPECIAL JUDGE