IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs March 21, 2017

**TEDDY ROBBINS, JR. v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Scott County**
No. 10780     E. Shayne Sexton, Judge

_____

**No. E2016-01531-CCA-R3-PC**

_____

The Petitioner, Teddy Robbins, Jr., was convicted after a jury trial of domestic assault, aggravated assault, especially aggravated kidnapping, and aggravated rape for crimes committed against his wife, and he was sentenced to an aggregate sentence of fifty years' imprisonment. The Petitioner filed a timely post-conviction petition, asserting that he received the ineffective assistance of counsel when his trial counsel failed to adequately prepare for trial and failed to present certain defense witnesses. After a hearing, the trial court found that counsel prepared adequately for trial, that a defense witness presented at the post-conviction hearing was not credible, and that the Petitioner failed to demonstrate any prejudice. The Petitioner appeals, contending that trial counsel's testimony at the hearing demonstrated inadequate preparation and that as a result, his strategic decision not to call a witness was not entitled to deference. After a thorough review of the record, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which TIMOTHY L. EASTER and J. ROSS DYER, JJ., joined.

Jeffrey C. Coller, Jacksboro, Tennessee, for the appellant, Teddy Robbins, Jr.

Herbert H. Slatery III, Attorney General and Reporter; Renee W. Turner, Senior Counsel; Jared R. Effler, District Attorney General; and David Pollard, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## FACTUAL AND PROCEDURAL HISTORY

### Trial

The Petitioner was arrested after beating the victim, his wife, from the morning of February 21, 2009, until the early morning hours of February 22, 2009, when the victim managed to call the police while the Petitioner was asleep. The victim testified at trial that the Petitioner inflicted various injuries on her by hitting and kicking her, choking her, and pulling out her hair. At one point, the victim fled the home with her five-year-old son and two-year-old daughter. The victim fell, and the Petitioner was able to grab one of the children, so the victim returned to the trailer. The Petitioner exhibited a knife to the victim throughout the ordeal and threatened to kill her, the children, and himself. At one point, he cut his own wrist with the knife, and he also cut the victim, poked her with the knife, and scraped the knife across her neck. The victim testified that the Petitioner left her alone in the home for two hours during the afternoon but told her he would kill her parents if she left. She was consequently afraid to leave at that time. The Petitioner returned with some acquaintances, who were uncomfortable because a police officer lived across the road. They stayed only a short time, and the Petitioner was again gone briefly.

In the evening, the Petitioner did not let the victim out of his sight. At some point that night, the Petitioner ripped off the victim's clothes and raped the victim anally and orally at knife point. The victim testified that the Petitioner raped her anally and orally rather than vaginally because she was menstruating at the time. The Petitioner choked the victim until she lost consciousness. The Petitioner finally fell asleep on top of the victim, and she was able to remove herself without waking him. She called the police and asked them not to park in her driveway because she was afraid the Petitioner would notice them and kill her before they had a chance to enter the home. She opened the door to the officers, who had parked across the street and approached on foot, and she whispered to them that the Petitioner was in the other room. He was then arrested. Law enforcement saw a cut on the Petitioner's wrist, and he stated he had cut himself in an attempted suicide. Officers saw a knife at the scene but did not collect it into evidence. They collected the victim's shirt and torn bra, both of which had reddish brown stains. An agent from the Tennessee Bureau of Investigation ("TBI") testified that no semen was found on either item. Law enforcement officers testified that the victim had various injuries and bruises and that handfuls of her hair were scattered about the house. The victim also sustained scratches at her throat from the knife.

- 2 -

The victim refused medical treatment on the scene and did not tell law enforcement that she had been raped, although she testified that she told them that the Petitioner made her "do things [she] didn't want to do." She stayed at her home for a period of time to allow the children to sleep and because she did not want to wake her family. Finally, she called her sister, who accompanied her to the hospital. At the hospital, the victim was treated by Dr. Ruchi Gupta, who documented various bruises and injuries. Dr. Gupta asked the victim whether she had been raped, and the victim stated that she had not been raped. Dr. Gupta testified that a victim of sexual assault would be less likely to disclose assault in a busy emergency room to a stranger. She also testified that she believed some of her patients had difficulty relating to her because of her ethnicity.

At trial, the victim testified that she was asked both by the nurses and by Dr. Gupta if she had been raped. She told them that she had not been raped because she was embarrassed, she did not want any invasive procedures to collect evidence, and she just wanted to go home as soon as possible. She was also reluctant to tell Dr. Gupta because Dr. Gupta had reprimanded her for talking on her cellular telephone in the examination room. However, the victim stated that she had told her sister she was raped. The victim's sister confirmed that the victim had told her she was raped and that she had begged the victim to tell medical personnel. The victim refused her sister's entreaties because she just wanted to go home as soon as possible after receiving treatment for her other injuries. The victim and her sister photographed her bruises and other injuries that day.

Later that evening, law enforcement officers came to take a statement from the victim at her sister's house. The victim gave a written statement of the Petitioner's assaults to Officer Roger Douglas, but she did not mention a sexual assault. However, something she said to Officer Douglas made Officer Sandra Tucker suspect a sexual assault. Based on Officer Tucker's instructions, Officer Douglas called the victim later that night and asked her if she had been raped. The victim then disclosed the rape. The victim also later sought treatment from another physician and disclosed the rape to him. On cross-examination, the victim testified that she did not believe she had ever met a man named Darren[1] Neal and that she had never recanted her allegations of rape or told Mr. Neal something contrary to her testimony of the events. The victim testified that the Petitioner had sent her a written statement which he wanted her to sign and which recanted her accusations, and this document was introduced into evidence.

---

[1] Mr. Neal's first name is not spelled consistently throughout the record. We use the spelling from the transcript of the post-conviction hearing.

Three jailhouse informants testified that the Petitioner had acknowledged some of the offenses to them in jail. Two of the informants also stated that the Petitioner had asked them to sign papers which recanted their statements to law enforcement regarding the Petitioner.

On the first day of trial, the trial court asked the parties to call their witnesses. The witnesses who were present at this time were sworn and excluded from the courtroom. The Petitioner's trial counsel did not call Mr. Denzil Stevens, who had been previously identified as a witness for the defense, at this time. At the close of the State's proof, trial counsel noted that Mr. Stevens would be one of his witnesses. At this point, the State objected, observing that the witness had been in the courtroom all day, listening to the trial. Trial counsel stated that he believed that the witness had not been present in the morning, but the trial court confirmed that the witness had been in the courtroom "all day long." Mr. Stevens was not permitted to testify.

The Petitioner also attempted to present the testimony of Mr. Neal. Mr. Neal was not present when the Petitioner called him, and trial counsel stated that he had attempted to serve a subpoena on Mr. Neal through the clerk's office by giving them a new address the previous week. His investigator also attempted to serve a subpoena on Mr. Neal, leaving the subpoena with the sister of Mr. Neal's girlfriend at Mr. Neal's residence. The trial court offered to issue a subpoena instanter. After conferring with the Petitioner, trial counsel stated that the defense would waive calling the witness.

The Petitioner was convicted of domestic assault, aggravated assault, especially aggravated kidnapping, and aggravated rape and sentenced to serve fifty years in prison. His convictions were affirmed on direct appeal. *State v. Teddy R. Robbins, Jr.*, No. E2013-00527-CCA-R3-CD, 2014 WL 545481, at *1 (Tenn. Crim. App. Feb. 10, 2014), *perm. app. denied* (Tenn. June 23, 2014).

## Post-Conviction

The Petitioner filed a timely post-conviction petition, alleging the ineffective assistance of trial counsel. Through post-conviction counsel, the Petitioner filed amended petitions. The Petitioner asserted that his trial counsel was deficient in failing to obtain statements from the victim and three jailhouse informants, failing to object to certain evidence, failing to properly cross-examine witnesses, failing to secure the testimony of Mr. Stevens, Mr. Neal, and the Petitioner's prior attorney, calling a TBI agent whose testimony was damaging, and failing to object to prosecutorial misconduct. The original, verified petition asserted that Mr. Neal absconded prior to trial after receiving a threat from the sheriff's office that he would be imprisoned if he testified. On appeal, the Petitioner limits his claims of prejudice to the failure to call Mr. Neal, and he

- 4 -

asserts that other instances of deficiency demonstrate that trial counsel's tactical decisions are not entitled to deference.

At the post-conviction hearing, trial counsel, currently a chancery court judge, testified that he had been practicing law for one and one-half years at the time of the Petitioner's trial. He was handling mostly criminal cases and had represented "dozens" of defendants charged with Class B felonies, but the Petitioner's case was his first jury trial and his first time to represent a defendant charged with a Class A felony.

Trial counsel testified that he was the Petitioner's sixth or seventh attorney, that the case had been pending for four years, and that numerous other attorneys had conducted work on the case and discussed the case with the Petitioner. Trial counsel hired a private investigator who spoke with several witnesses and also met with the Petitioner.

Trial counsel's time sheets were entered into evidence. Trial counsel acknowledged that he did not conduct any legal research, that he only met with his client once, for approximately three hours, and that he did not bill any time for witness preparation. He testified that while the case was serious and included voluminous discovery, there were no complicated legal issues and his investigator spoke with witnesses. Trial counsel spoke with the investigator at the courthouse and by telephone, and the investigator was present during trial.

At the post-conviction hearing, trial counsel did not recall who Mr. Neal was or what his testimony would have been. He stated that he believed he cross-examined the victim regarding Mr. Neal at the prompting of the Petitioner, who was very assertive and would ask him to put certain questions to witnesses. Trial counsel testified that he attempted to subpoena Mr. Neal approximately one month prior to trial and acknowledged that it appeared the subpoena did not contain a street number and was not served. He acknowledged that the record contained a subpoena from 2010, issued by prior counsel, which bore the street number missing from the subpoena he had issued. Trial counsel testified that he attempted to subpoena Mr. Neal at a different address prior to trial, that he had spent "months" trying to find him, and that his investigator found Mr. Neal's new address immediately before trial. He was unsuccessful in serving a subpoena on Mr. Neal. At trial, trial counsel conferred with the Petitioner and declined to have the trial court issue a subpoena instanter for Mr. Neal.

Trial counsel acknowledged that he did not identify Mr. Stevens as a witness on the first day of trial and that, as a result, Mr. Stevens was not sworn, remained in the courtroom, and could not testify. Trial counsel testified that the Petitioner had a conspiracy theory that the victim would be the beneficiary of Mr. Stevens's estate if she

were able to imprison the Petitioner. He testified that he thought the testimony would not be beneficial and would only confuse the jury. Trial counsel acknowledged that he did not investigate the jailhouse informants beyond obtaining their criminal records. He testified that the State's discovery indicated that these witnesses were not being in any way compensated for their testimony and that his strategy was to get them off the stand as quickly as possible. He did not object to Dr. Gupta's testimony that a rape victim would be reluctant to report assault in certain circumstances, even though Dr. Gupta's area of expertise was emergency medical treatment.

Trial counsel acknowledged that he did not interview the victim. He stated that the Petitioner had indicated that the victim would recant her accusations, but his investigator spoke to the victim and determined that this was not the case. He accordingly relied on her testimony in the preliminary hearing rather than seeking to interview her further. He acknowledged that he did not know the victim had been arrested for driving under the influence ("DUI") two years after the assaults and approximately one year before trial. He testified that the State had not disclosed any agreement with the victim in which she would receive leniency on the DUI charge in exchange for her testimony. The victim's attorney, Mr. Philip Kazee, testified that the victim was charged with DUI and that she pled guilty to reckless driving based on lab results which were barely over the legal limit. He testified that there was no agreement with the prosecution tying the resolution of the DUI case to testimony against the Petitioner, and he testified that the victim was motivated to testify against the Petitioner because she was upset and was the victim of a crime.

Trial counsel acknowledged that he did not renew a motion to suppress references to the knife which was not collected. He did not interview the TBI agent who testified regarding the victim's torn bra and stained shirt. He agreed that the introduction of testimony regarding the torn bra and shirt was somewhat harmful but testified that he thought the benefit of the testimony that no semen was recovered outweighed the harm. Trial counsel discussed a plea offer with the Petitioner, but the Petitioner would not consider a plea.

The Petitioner presented the testimony of Mr. Neal, who had a prior felony conviction for the sale of a schedule III drug. According to Mr. Neal, Mr. Bill Jones, one of the Petitioner's former attorneys, spoke to him once regarding the Petitioner's case, and he told Mr. Jones that he was willing to testify for the defense. Mr. Neal testified that prior to the trial, he had seen the victim at the home of Mr. Stevens and that he had spoken with the victim on the porch. The victim carried a folder of newspaper clippings regarding the assaults. She told him that the Petitioner had not raped her because she was menstruating at the time. She did not make any statements regarding anal or oral rape. Mr. Neal testified that if the victim had testified that she had never met him, she would

not have been telling the truth. No attorney other than Mr. Jones, who was accompanied by Mr. Dale Potter, ever contacted him regarding the Petitioner's case. Mr. Neal denied having been interviewed by attorney Max Huff and denied being served with a subpoena in 2010. A document showing that Mr. Neal had been served with a subpoena in 2010 was introduced into evidence. Mr. Neal acknowledged that he had been "in and out of jail" between 2009 and 2012.

Two of the Petitioner's former attorneys, Mr. Dale Potter and Mr. Max Huff, testified regarding their work on the Petitioner's case. Mr. Potter worked at the Public Defender's office and represented the Petitioner. He testified that a different attorney with the Public Defender represented the Petitioner at the preliminary hearing, and that he and Mr. Jones took over the case. Mr. Potter testified that he met with the Petitioner several times and attempted to interview some witnesses. He and Mr. Jones interviewed Mr. Neal, and Mr. Neal was willing to testify for the Petitioner.

Mr. Huff was retained by the Petitioner at some point after the preliminary hearing. Mr. Huff testified that he interviewed Mr. Neal, who could not remember the victim recanting her allegations and who was not willing to cooperate with the defense. Mr. Huff further testified that he interviewed many witnesses and that one of the jailhouse informants had told him that the prosecutor had pressured the informant into testifying against the Petitioner. Mr. Huff stated that in a subsequent interview, the informant denied having been pressured. Mr. Huff was not subpoenaed to impeach the informant at trial. He acknowledged that the informant had admitted to making inconsistent statements at trial and that the informant's trial testimony was that the Petitioner had pressured him to sign a false statement. Mr. Huff discussed with trial counsel the witness interviews he had conducted.

The post-conviction court denied relief. The court found that the testimony of trial counsel was credible and that he had made reasonable strategic choices. The post-conviction court found that Mr. Neal's testimony was not credible and that trial counsel had chosen not to call him for that reason. The court concluded that trial counsel adequately prepared for trial and that the Petitioner had failed to demonstrate prejudice. The Petitioner appeals.

## ANALYSIS

The Petitioner claims that he received the ineffective assistance of counsel, pointing to myriad omissions which he contends show deficient representation. However, the sole ground of prejudice which he asserts is that trial counsel acted deficiently in failing to procure the testimony of Mr. Neal and that the deficiency was

prejudicial because the convictions were based mainly on the victim's testimony, which Mr. Neal would have impeached.

A petitioner is entitled to post-conviction relief when a conviction or sentence is "void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. The petitioner bears the burden of proving the allegations of fact in the petition by clear and convincing evidence. *Id*. § 40-30-110(f). Evidence is clear and convincing when the correctness of the conclusions drawn from the evidence admits no serious or substantial doubt. *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009).

The findings of fact made by a post-conviction court are conclusive on appeal unless the evidence preponderates against them. *Ward v. State*, 315 S.W.3d 461, 465 (Tenn. 2010). This court may not substitute its own inferences for those drawn by the post-conviction court, and questions concerning the credibility of witnesses, the weight and value of the evidence, and the factual issues raised by the evidence are to be resolved by the post-conviction court. *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001). "The appellate court's review of a legal issue, or of a mixed question of law or fact such as a claim of ineffective assistance of counsel, is de novo with no presumption of correctness." *Vaughn v. State*, 202 S.W.3d 106, 115 (Tenn. 2006).

The right to counsel is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution. *Pylant v. State*, 263 S.W.3d 854, 868 (Tenn. 2008). The right to counsel encompasses "the right to 'reasonably effective' assistance, that is, assistance 'within the range of competence demanded of attorneys in criminal cases.'" *Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). In evaluating a claim of ineffective assistance of counsel, the court must determine "'whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.'" *Vaughn*, 202 S.W.3d at 116 (quoting *Strickland*, 466 U.S. at 686).

To show that relief is warranted on a claim of ineffective assistance of counsel, the petitioner must establish both that counsel's performance was deficient and that the deficiency prejudiced the defense. *Finch v. State*, 226 S.W.3d 307, 315 (Tenn. 2007). Deficiency requires showing that counsel's errors were so serious "that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. To demonstrate deficiency, the petitioner must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *Pylant*, 263 S.W.3d at 868. Courts must make every effort "'to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at

the time.'" *Felts v. State*, 354 S.W.3d 266, 277 (Tenn. 2011) (quoting *Strickland*, 466 U.S. at 689).

The reviewing court must begin with "the strong presumption that counsel provided adequate assistance and used reasonable professional judgment to make all strategic and tactical significant decisions." *Davidson v. State*, 453 S.W.3d 386, 393 (Tenn. 2014). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Felts*, 354 S.W.3d at 277 (quoting *Strickland*, 466 U.S. at 690-91). Generally, a post-conviction court gives deference to strategic decisions, "but only when such choices are informed ones based upon adequate preparation." *Moore v. State*, 485 S.W.3d 411, 419 (Tenn. 2016). The defendant's own statements and actions may determine or substantially influence the reasonableness of counsel's choices. *Felts*, 354 S.W.3d at 277

In determining prejudice, the post-conviction court must decide whether there is a reasonable probability that, absent the errors, the result of the proceeding would have been different. *Grindstaff*, 297 S.W.3d at 216. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Honeycutt*, 54 S.W.3d at 768 (quoting *Strickland,* 466 U.S. at 694). "That is, the Petitioner must establish that his counsel's deficient performance was of such a degree that it deprived him of a fair trial and called into question the reliability of the outcome." *Finch*, 226 S.W.3d at 316. A claim may be denied for failure to prove either deficiency or prejudice, and a court need not address both prongs if the petitioner has failed to establish either deficiency or prejudice. *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996).

While the Petitioner claims that trial counsel made various errors, including failing to interview any witnesses, failing to conduct any legal research, and only meeting once with the Petitioner, he does not claim that any prejudice accrued from any of these acts or omissions. Instead, he argues that trial counsel's generally incomplete investigation demonstrates the unreasonableness of trial counsel's strategic choices in general and that the failure to present Mr. Neal is not entitled to deference and was prejudicial. *See Moore*, 485 S.W.3d at 419. We note, however, that the Petitioner only claims prejudice from the failure to call Mr. Neal and that the prejudice inquiry directs us to determine whether there is a reasonable probability that the results of the proceeding would have been different "'but for counsel's unprofessional errors.'" *Felts*, 354 S.W.3d at 277 (quoting *Strickland*, 466 U.S. at 695). Accordingly, there must be a causal relationship between the deficiency and the prejudice. The Petitioner does not argue that these various alleged deficiencies amount to a complete denial of the right to counsel. *See Berry v. State*, 366 S.W.3d 160, 174 (Tenn. Crim. App. 2011) ("A reviewing court will

presume prejudice to an accused's right to counsel only when there has been the complete deprivation of counsel at a critical stage of the proceedings, a complete failure to subject the State's case to adversarial testing, or under circumstances of such magnitude that no attorney could provide effective assistance."). Neither does he show any causal link between these various deficiencies and his claim of prejudice arising from the failure to present the testimony of Mr. Neal.

We turn to the argument that trial counsel performed deficiently in failing to locate or interview Mr. Neal and in choosing not to request a subpoena at trial. The Petitioner presented evidence that trial counsel did not interview Mr. Neal, could not recall what Mr. Neal's testimony would be, was unsuccessful in serving a subpoena on Mr. Neal, and declined to have the court issue a subpoena during the trial, waiving his right to call the witness. Mr. Potter testified that he and Mr. Jones interviewed Mr. Neal and that Mr. Neal was willing to testify to impeach the victim. Mr. Neal likewise testified at the post-conviction hearing that he had been willing to testify for the Petitioner and that he had heard the victim state that the Petitioner did not rape her. At the hearing, however, trial counsel testified that he had spent "months" trying to locate Mr. Neal and that he had issued three subpoenas for Mr. Neal at the Petitioner's insistence. According to trial counsel, his investigator discovered Mr. Neal's whereabouts shortly before trial but was unsuccessful in serving a subpoena on him. Mr. Huff testified that he interviewed Mr. Neal and that Mr. Neal was not cooperative and claimed he could not remember the victim recanting any statement. The post-conviction court credited the testimony of trial counsel, and Mr. Huff's testimony that Mr. Neal was not cooperative corroborates trial counsel's testimony. Mr. Neal was apparently "in and out of jail" during the time leading up to trial. The original, verified petition alleged that Mr. Neal was unavailable to testify because he had absconded shortly before he was scheduled to testify. The post-conviction court concluded that the Petitioner had not demonstrated that trial counsel was deficient in failing to obtain Mr. Neal's testimony, and we agree.

The post-conviction court also declined to find prejudice, and we conclude that the Petitioner cannot in any event demonstrate any prejudice from the failure to present Mr. Neal's testimony. We note that Mr. Neal testified that the victim stated to him that she had not been raped vaginally, and he testified that the victim did not make any statements to him denying oral or anal rape; accordingly, Mr. Neal's testimony was not inconsistent with the victim's testimony at trial regarding the offenses. Moreover, the post-conviction court concluded that Mr. Neal's testimony was not credible, and Mr. Huff testified that Mr. Neal had told him that he did not recall any conversation with the victim and did not want to cooperate with the defense. The record demonstrates that the Petitioner has a long history of attempting to influence the testimony of various witnesses, writing out affidavits with testimony favorable to him and then attempting to pressure the victim and two jailhouse informants into signing the affidavits. Mr. Neal's testimony was intended

to impeach the victim's testimony regarding the rape, but his testimony did not vary materially from the victim's. There is no reasonable probability that the results of the trial would have been different if trial counsel had succeeded in procuring Mr. Neal's testimony, which was not credible according to the post-conviction court and which was moreover consistent with the victim's testimony. Accordingly, the Petitioner is not entitled to relief.

## CONCLUSION

Based on the foregoing reasoning, we affirm the judgment of the post-conviction court.

_____
JOHN EVERETT WILLIAMS, JUDGE