IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs June 25, 2020

**CORBYN DAVIS v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Madison County**
**No. C-19-48  Donald H. Allen, Judge**

_____

**No. W2019-01886-CCA-R3-PC**

_____

The Petitioner, Corbyn Davis, appeals the denial of his post-conviction petition challenging his convictions for first degree, premeditated murder and possessing a firearm after having been convicted of a felony.  On appeal, the Petitioner asserts that his trial counsel provided ineffective assistance by failing to provide him discovery in a timely manner, failing to investigate telephone records and social media accounts, failing to move to suppress the murder weapon, failing to present the testimony of a witness, and failing to prepare him for trial.  After a thorough review of the record, we conclude that the Petitioner has failed to show deficiency or prejudice with regard to each claim, and we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, P.J., delivered the opinion of the court, in which ALAN E. GLENN and CAMILLE R. MCMULLEN, JJ., joined.

William J. Milam, Jackson, Tennessee, for the appellant, Corbyn Davis.

Herbert H. Slatery III, Attorney General and Reporter; Renee W. Turner, Senior Assistant Attorney General; Jody Pickens, District Attorney General; and Al Earls, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTUAL AND PROCEDURAL HISTORY**

**Trial**

The Petitioner was convicted of shooting the victim, Mr. Jamar Rogers, at a nightclub in Jackson, Tennessee.  *State v. Corbyn Davis*, No. W2017-00141-CCA-R3-

CD, 2018 WL 576659, at *1 (Tenn. Crim. App. Jan. 26, 2018), *perm. app. denied* (Tenn. May 18, 2018). The proof at trial tying the Petitioner to the crime included the testimony of Mr. Demarcus Triplett that he was with the Petitioner on the night of the shooting and witnessed the shooting. *Id.* at *2. Mr. Triplett testified that he, the Petitioner, and Mr. Josh Cobb were in the parking lot of the nightclub and were joined by a fourth man whom Mr. Triplett did not know. *Id.* As the four were driving away from the parking lot in a Grand Marquis or "Crown Vic," the Petitioner got out of the vehicle, approached the victim, spoke to him, and raised a gun. *Id.* at *3. Mr. Triplett turned away and heard a gunshot a few seconds later. *Id.* The Petitioner re-entered the vehicle, and Mr. Triplett drove away from the club. *Id.* Mr. Triplett also gave a history of how the murder weapon left the Petitioner's possession. *Id.* According to Mr. Triplett, he and the Petitioner were robbed "a couple" of weeks later by a large group of men including Mr. Lewis Dotson, and the men took a gun from the Petitioner which appeared to be the same gun as the murder weapon. *Id.* Mr. Triplett stated he was afraid of guns and did not like them, but he acknowledged a previous gun charge and identified a picture of himself selling a gun on social media. *Id.*

The victim's girlfriend witnessed the shooting. She testified that the Petitioner approached the victim as she and the victim were walking to their vehicle and that the Petitioner said something. *Id.* at *1. The victim was shot as he was following her into the vehicle. *Id.* She observed a Grand Marquis leaving the scene. *Id.* However, she acknowledged that her initial statement to the police did not mention the Petitioner speaking to the victim, and her initial statement included a declaration that she did not see a vehicle. *Id.* at *2. Ms. Brittney Wilson, who was sitting in the vehicle the victim was entering as he was shot, witnessed a Grand Marquis or "Crown Vic" leave the scene. *Id.*

Mr. Matthew Price was incarcerated with the Petitioner and testified that the Petitioner told him that the Petitioner had shot someone at a club and that another person was subsequently arrested with the gun used in the shooting. *Id.* at *3. The defense introduced proof that Mr. Price was only incarcerated with the Petitioner for approximately one month and not four months as he had testified. *Id.* at *5.

The bullet recovered from the victim was matched to a gun seized from a home where a group of eight to ten men were arrested, including Mr. William Curry-Anthony and Mr. Dotson, the man who allegedly robbed the Petitioner of the gun. *Id.* at *4, 5. Mr. Curry-Anthony testified for the defense that after the gun was seized, he initially told police he had found it, but subsequently gave a statement that he had purchased the gun from Mr. Triplett. *Id.* Mr. Curry-Anthony acknowledged being a gang member and acknowledged that the group arrested during the seizure of the weapon had allocated the weapons to the non-felons in the group. *Id.* He maintained that he had purchased the gun

- 2 -

and that the gun was sold to him by Mr. Triplett. *Id.* He denied that the gun had been in the possession of Mr. Dotson. *Id.*

The Petitioner was convicted of first degree, premeditated murder and possessing a firearm after having been convicted of a felony, and he received consecutive sentences of life imprisonment and four years in prison. *Id.* On direct appeal, this court rejected a challenge to the sufficiency of the evidence. *Id.* at \*8.

## Post-Conviction Proceedings

The Petitioner filed a timely post-conviction petition alleging numerous instances of conduct he asserted amounted to ineffective assistance of counsel, including that trial counsel failed to share exculpatory evidence with him, failed to obtain his telephone records to demonstrate an alibi, failed to suppress the weapon, and failed to present the testimony of Mr. Cobb, who would have exonerated the Petitioner.

At the post-conviction hearing, trial counsel testified that he met with the Petitioner six times for approximately one hour each time. Trial counsel and the Petitioner discussed discovery and whether or not the Petitioner should testify. Trial counsel gave the Petitioner a copy of the discovery materials when trial counsel obtained them. Trial counsel testified that the district attorney provided open-file discovery.

Trial counsel spoke with two witnesses whose names the Petitioner had given him: the Petitioner's girlfriend, Ms. Jerica Thompson,[1] and a woman named Erica whom the Petitioner was also dating. Ms. Thompson could not recall if the Petitioner was with her on the night of the shooting, but both Ms. Thompson and Erica gave trial counsel information which he used to impeach Mr. Triplett. Trial counsel did not recall the Petitioner asking him to obtain telephone records.

Trial counsel did not attempt to suppress the weapon because it was not seized from the Petitioner or from his residence and because the Petitioner did not have standing to contest the legality of the search. Expert witnesses connected the gun to the crime, but no expert could connect the Petitioner to the gun.

Mr. Triplett had identified Mr. Cobb as an individual who was present in the Grand Marquis on the night of the shooting, but trial counsel chose not to call Mr. Cobb to testify at trial. Trial counsel stated that prior to trial, while he was visiting the jail, he received a letter signed by Mr. Cobb. In the letter, Mr. Cobb stated that he had been so

---

[1] We use the spelling of Ms. Thompson's first name provided in the petition and used in the post-conviction court's order.

inebriated on the night of the shooting that he did not know what happened. Mr. Cobb wrote that the Petitioner was not present at the club that night, but he also stated that he did not want to be involved with the case at all and did not want to go to court. The letter was introduced as an exhibit. Trial counsel spoke to Mr. Cobb's attorney, and Mr. Cobb's attorney indicated that Mr. Cobb would refuse to testify. Trial counsel stated that Mr. Cobb's letter was in conflict with a prior statement Mr. Cobb had made to police in which he identified the Petitioner as the shooter. Trial counsel felt that presenting Mr. Cobb as a witness would be more damaging than helpful because Mr. Cobb's initial statement was very harmful to the Petitioner and the prosecutor would have been able to introduce the initial statement to impeach Mr. Cobb. At the post-conviction hearing, the State introduced Mr. Cobb's statement to police, in which he gave some details of the night and implicated the Petitioner in the murder. Mr. Cobb recalled that the group was leaving the parking lot when the Petitioner shot two times out of the car window at the victim. Mr. Cobb identified the Petitioner and Mr. Triplett in photographic lineups.

The Petitioner testified that although trial counsel obtained discovery prior to trial "to go over," he did not actually receive the discovery himself until approximately one month prior to trial. He met with trial counsel four to five times, with each meeting lasting only twenty minutes.

The Petitioner testified that he told trial counsel to investigate witnesses, including his girlfriend, Ms. Thompson, and his other girlfriend, Erica. He asserted that he was with Ms. Thompson on the night of the shooting. The Petitioner asked trial counsel to obtain his telephone records to help prove his whereabouts that evening.

The Petitioner asked trial counsel to suppress the weapon tied to the murder. He asserted that he had never owned a gun or been in an altercation with anyone, although he had prior drug-related convictions. On cross-examination, he acknowledged that he had been convicted twice of resisting arrest and once of domestic assault, but he insisted that the domestic assault charge was "not violent" because there was "no hospital report." Trial counsel advised him not to testify because of his prior offenses.

The Petitioner asked trial counsel to call Mr. Cobb to testify in his defense. Mr. Cobb had told the Petitioner that he was frightened of Mr. Triplett and that it had not been "the first time Mr. Triplet[t] shot somebody." The Petitioner noted that Mr. Cobb's original statement was not consistent with Mr. Triplett's statement because Mr. Cobb told police that the Petitioner shot out of the car window whereas Mr. Triplett testified that the Petitioner exited the car to shoot.

The post-conviction court generally credited trial counsel's testimony at the post-conviction hearing. The post-conviction court found that Ms. Thompson had told trial

- 4 -

counsel that she could not remember whether she was with the Petitioner that night. The court found that trial counsel chose not to call Mr. Cobb because he wanted to exclude Mr. Cobb's prior statement, which was incriminating to the Petitioner. The post-conviction court concluded that none of trial counsel's alleged acts or omissions amounted to deficient performance and that the Petitioner had not shown prejudice. The Petitioner appeals the denial of his petition.

## ANALYSIS

On appeal, the Petitioner asserts that he received ineffective assistance because trial counsel did not provide him discovery in a timely manner, did not investigate social media accounts or the Petitioner's telephone records, did not move to suppress the weapon, failed to present the testimony of Mr. Cobb, and failed to prepare the Petitioner for trial. Because the Petitioner has failed to demonstrate deficiency or prejudice with regard to these claims, the post-conviction court properly denied relief.

Under the Post-Conviction Procedure Act, a petitioner is entitled to relief when "the conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. The burden of proving allegations of fact by clear and convincing evidence falls to the petitioner seeking relief. T.C.A. § 40-30-110(f). The post-conviction court's findings of fact are binding on the appellate court unless the evidence preponderates against them. *Kendrick v. State*, 454 S.W.3d 450, 457 (Tenn. 2015). Accordingly, the reviewing court defers to the post-conviction court's findings regarding the credibility of witness, the weight and value of witness testimony, and the resolution of factual issues. *Id.* Questions of law and mixed questions of law and fact are reviewed de novo. *Id.* Each element of a claim of ineffective assistance of counsel is a mixed question of law and fact. *Id.*

Under the Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution, the accused is guaranteed the right to effective assistance of counsel. *Moore v. State*, 485 S.W.3d 411, 418 (Tenn. 2016). To prevail on a claim that he was denied his constitutional right to effective assistance of counsel, a petitioner must prove both that counsel's performance was deficient and that the deficient performance caused prejudice to the defense. *Kendrick*, 454 S.W.3d at 457 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

Deficiency requires showing that counsel's errors were so serious "'that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *Nesbit v. State*, 452 S.W.3d 779, 787 (Tenn. 2014) (quoting *Strickland*, 466 U.S. at 687). To demonstrate deficiency, the petitioner must show that counsel's

performance fell below an objective standard of reasonableness under prevailing professional norms. *Pylant v. State*, 263 S.W.3d 854, 868 (Tenn. 2008). In evaluating counsel's performance, "'[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.'" *Kendrick*, 454 S.W.3d at 458 (quoting *Strickland*, 466 U.S. at 690-91).

In determining prejudice, the post-conviction court must decide whether there is a reasonable probability that, absent the errors, the result of the proceeding would have been different. *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009). "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *State v. Honeycutt*, 54 S.W.3d 762, 768 (Tenn. 2001) (quoting *Strickland*, 466 U.S. at 694). The petitioner must show that the deficiency deprived him of a fair trial and called the reliability of the outcome of the proceeding into question. *Finch v. State*, 226 S.W.3d 307, 316 (Tenn. 2007). A claim may be denied for failure to establish either deficiency or prejudice, and the reviewing court need not address both components if a petitioner has failed to establish one. *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996).

### A. Discovery

The Petitioner asserts that he did not receive his discovery until approximately one month prior to trial. However, he also testified that trial counsel had discovery materials "to go over" with him prior to that time. The post-conviction court generally credited trial counsel's testimony, and trial counsel testified that in the process of preparation, his first step was to obtain discovery and send a copy to the Petitioner. The Petitioner has not demonstrated deficiency, and he has made no allegation regarding how he was prejudiced by receiving discovery at the time he obtained it. He is not entitled to relief.

### B. Telephone Records

The Petitioner next asserts that trial counsel failed to obtain his telephone records, which would have shown his whereabouts on the day of the crime. Trial counsel did not recall the Petitioner asking for his telephone records. Instead, trial counsel investigated the Petitioner's alibi witness, who could not remember if the Petitioner was with her. The Petitioner introduced no proof at the hearing that his telephone records or social media accounts contained evidence of his whereabouts. This court cannot speculate regarding what the proof would have shown. *See Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). Accordingly, the Petitioner has not shown a reasonable probability that the outcome of the proceeding would have been different if trial counsel had obtained the desired records.

## C. Suppression

The Petitioner asserts trial counsel was deficient in failing to move to suppress the weapon. The weapon was seized during the search of a residence with no demonstrated connection to the Petitioner, and trial counsel testified he did not challenge the search because the Petitioner lacked standing. "In order to succeed in proving ineffective assistance of counsel with respect to counsel's failure to file a motion …, [a petitioner] must satisfy both prongs of the *Strickland* test, showing that counsel's failure to file the motion was deficient and that the deficient performance prejudiced the defense." *Vaughn v. State*, 202 S.W.3d 106, 120 (Tenn. 2006), *abrogated on other grounds by Brown v. Jordan*, 563 S.W.3d 196, 202 (Tenn. 2018). Accordingly, the Petitioner must demonstrate a reasonable probability that, had the motion been filed, the outcome of the proceeding would have been different. *See Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986) ("[T]he defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice."). Here, the Petitioner presented no evidence relevant to a motion to suppress. The evidence at trial suggests that the Petitioner lacked standing to contest the search. *See State v. Oody*, 823 S.W.2d 554, 560 (Tenn. Crim. App. 1991) (noting that the proponent of a challenge to a search bears the burden of establishing a legitimate expectation of privacy in the property). The Petitioner has failed to show deficiency or prejudice.

## D. Failure to Call Witness

The Petitioner next contends that trial counsel should have called Mr. Cobb as a witness. However, the post-conviction court generally credited the testimony of trial counsel, and trial counsel stated he did not wish to call Mr. Cobb as a matter of strategy because he did not want the damaging statements Mr. Cobb initially made to law enforcement to be admitted into evidence. We conclude that the Petitioner has not demonstrated deficient performance. *See Kendrick*, 454 S.W.3d at 458 (observing that strategic choices made after thorough investigation are virtually unchallengeable). Furthermore, trial counsel testified that Mr. Cobb's attorney had stated that Mr. Cobb would refuse to testify. Because Mr. Cobb's letter and attorney both indicated he would refuse to testify and because Mr. Cobb did not testify at the post-conviction hearing, the Petitioner has failed to establish a reasonable probability that the outcome of the proceeding would have changed if trial counsel had attempted to subpoena Mr. Cobb. *See Black*, 794 S.W.2d at 757.

## E. Preparation

The Petitioner also asserts that he was not prepared to go to trial. Because the Petitioner has not specified the particulars of how he was not prepared or what prejudice he suffered, we conclude this issue is waived. *See* Tenn. Ct. Crim. App. R. 10(b) ("Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court."); *State v. Hester*, 324 S.W.3d 1, 80 (Tenn. 2010) (observing that an issue is waived when a party fails to develop an argument in support of its contention or merely constructs a skeletal argument).

## F. Cumulative Error

Insofar as the Petitioner asserts he suffered from the cumulative effects of error, we conclude he is not entitled to relief because he has not demonstrated any deficient performance. *Hester*, 324 S.W.3d at 77; *Raina Fisher v. State*, No. M2016-00594-CCA-R3-PC, 2017 WL 2443080, at *13 (Tenn. Crim. App. June 6, 2017) (noting that a petitioner who has not established deficient performance by counsel on any single issue could not claim that counsel's cumulative errors resulted in a violation of the right to counsel).

## CONCLUSION

Based on the foregoing, we affirm the post-conviction court's denial of relief.

_____
JOHN EVERETT WILLIAMS, PRESIDING JUDGE