IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs January 8, 2020

**MICHAEL HART v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Madison County**
**No. C-18-236        Roy B. Morgan, Jr., Judge**
_____

**No. W2019-00019-CCA-R3-PC**
_____

The Petitioner, Michael Hart, appeals the Madison County Circuit Court's denial of his petition requesting DNA analysis of evidence pursuant to the Post-Conviction DNA Analysis Act of 2001. Based upon the record and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which THOMAS T. WOODALL and ALAN E. GLENN, JJ., joined.

Michael Hart, Pro Se, Whiteville, Tennessee.

Herbert H. Slatery III, Attorney General and Reporter; Nicholas W. Spangler, Assistant Attorney General; Jody S. Pickens, District Attorney General; and Alfred Lynn Earls, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I. Factual Background**

In February 2005, the Petitioner pled guilty to first degree premeditated murder; first degree felony murder; aggravated robbery, a Class B felony; and evading arrest, a Class E felony. At the Petitioner's guilty plea hearing, the State gave the following factual account of the crimes:

> "[O]n June 17th of the year 2004 around 9:30 a.m., Ms. Frances Riddick was at the mall here in Jackson-Madison County. She parked her vehicle on the north side of Goldsmith's Department Store and went into the shoe department entrance. As she walked into the door, she observed a black

male, later identified to be the [Petitioner], sitting on a stool at the door on the outside sidewalk.  When she exited the same door that she went in, this same black male, again the [Petitioner], was still outside the door.  She went to her vehicle that was parked in the parking lot, and as she was fixing to put her key in the door, the black male approached her from the front of her vehicle, this being the [Petitioner] . . . . He had a gun in his hand and he told her to give him her purse.  He grabbed hold of her purse, and as they struggled over it, he eventually demanded that she give it to him at gunpoint which she did.  He then fled to the mall area towards Goldsmith's.  She ran after him, screaming for someone to help.

Three witnesses, Terry Reeves, Terry Reeves, Jr. and Brandon Stout saw the [Petitioner] running, fleeing the scene with the purse, and they gave him chase through Goldsmith's into the courtyard of the mall, at which time in the courtyard, he did turn and fire a shot at these men chasing him, at which point they followed him at a more discreet distance.

During this time, police were advised of the situation and a call went out.  While in the parking lot, Officer Haney did observe the [Petitioner] and did give chase to the [Petitioner] after demanding that he stop.  The [Petitioner] fled in a vehicle across over to Tinker Hill, from Tinker Hill went to Wiley Parker, running stop signs at Wiley Parker and Tinker Hill, went west on Wiley Parker down Wallace Road, down Old Hickory from Wallace, during this time reaching speeds up to 60, 65 miles an hour.  The officer did have his emergency lights and equipment going trying to get the vehicle to stop.  Other vehicles also joined in the chase which ranged over many streets here in Jackson including Hollywood Drive.

During this chase, the police videos were operating, and this is recorded on video, and this has been provided to the Petitioner and counsel. . . . Police Officer Belke's vehicle was struck head-on by the [Petitioner].  The [Petitioner] was able to keep going.  The chase continued to Deaderick, and finally the [Petitioner] was stopped at the dry cleaners at Orleans and Highland.

The police video shows the [Petitioner] exiting his vehicle with the pistol.  Officer Andy Bailey was one of the vehicles that helped corner the [Petitioner] at the dry cleaners.  Officer Bailey did have a crack in the passenger's side window where the window had been lowered.  The video showed the [Petitioner] aiming the pistol through the window shooting

Officer Bailey twice, one of those striking him in the abdomen area and one in the leg. As a result of those gunshots, Officer Bailey was killed."

Michael J. Hart v. State, No. W2006-00783-CCA-R3-PC, 2007 WL 778827, at *1-2 (Tenn. Crim. App. at Jackson, Mar. 15, 2007), perm. app. denied, (Tenn. Aug. 13, 2007).

The trial court merged the conviction of first degree premeditated murder into the conviction of first degree felony murder and, pursuant to the plea agreement, sentenced the Petitioner to concurrent sentences of life without parole for felony murder, eight years for aggravated robbery, and two years for evading arrest. The Petitioner filed a timely pro se petition for post-conviction relief, claiming that his guilty pleas were not voluntary and knowing due to trial counsel's deficient performance during the pre-plea proceedings. Id. at *2. The post-conviction court appointed counsel, counsel filed an amended petition, and the post-conviction court denied the petition after an evidentiary hearing. Id. at *2, 3.

On October 6, 2018, the Petitioner filed a petition for DNA testing of "all human biological evidence in the State's possession or control and related to his convictions" pursuant to Tennessee Code Annotated section 40-30-303. The State responded, arguing that the Petitioner was not entitled to testing because any DNA evidence was irrelevant to the case.

The post-conviction court appointed counsel for the Petitioner and held a hearing on December 17, 2018. During the hearing, Aimee Oxley, Director of the Property and Evidence Division at the Jackson Police Department (JPD), testified that at the State's request, she reviewed the evidence collected in this case. The evidence consisted of firearms, shell casings from the scene, latent fingerprints, clothing, and a video. The following items were sent to the Tennessee Bureau of Investigation (TBI) for DNA testing: A thirty-two-caliber Smith and Wesson revolver, buccal swabs from the Petitioner, leaves from the crime scene, swabs from the crime scene, and Sergeant Bailey's blood sample. Testing showed the presence of the Petitioner's DNA on the revolver. Oxley said that "two swabs of an unknown substance" were collected from the exterior of Sergeant Bailey's patrol car but that the swabs were not sent to the TBI for testing. On cross-examination, Oxley acknowledged that Sergeant Bailey was shot from the passenger side of his patrol car and that the unknown substances were collected from the passenger side of his car.

Special Agent Kathy Ferguson of the TBI testified that she worked for the JPD when Sergeant Bailey was killed and that she was the case agent for the investigation. Agent Ferguson explained that the passenger side of Sergeant Bailey's patrol car struck the driver's side of the Petitioner's car. The Petitioner's car then struck a couple of other

vehicles in the parking lot. The Petitioner exited the driver's side of his car and was "right at the passenger's side of Sergeant Bailey's vehicle." The Petitioner fired rounds into Sergeant Bailey's patrol car, striking him twice, and the shooting was captured on video. The Petitioner ran between the vehicles, and two officers pursued him and shot at him as he ran from the scene. The chase also was captured on video. The police interviewed the Petitioner, and he made incriminating statements during the interview. Ms. Riddick and the three men who chased the Petitioner at the mall identified the Petitioner. Agent Ferguson said there was never any other suspect in the case.

Agent Ferguson testified that she responded to the scene after the shooting and that she directed officers on the collection of evidence. The murder weapon was present, spent shell casings were scattered in the area, and officers swabbed several areas of blood. Agent Ferguson collected some leaves with blood on them in order to show the Petitioner's "path of travel." The Petitioner's clothing, Sergeant Bailey's clothing, and the bullets recovered from Sergeant Bailey during surgery also were collected. Swabs of an unknown substance were collected from the passenger side of Sergeant Bailey's patrol car but were not submitted to the TBI for testing. Agent Ferguson said that there was "[n]o telling what that substance could be" but that regardless, the results would not change the evidence on the video. On cross-examination, Agent Ferguson testified that the Petitioner's DNA was on the murder weapon and that his blood was on the leaves.

At the conclusion of the hearing, the post-conviction court found that two unknown substances were collected from the exterior of Sergeant Bailey's patrol car, that the substances were not subjected to DNA analysis, and that the substances were still in existence and in a condition where DNA analysis could be conducted. However, the post-conviction court found that based on the other evidence in the case, a reasonable probability did not exist that the Petitioner would not have been prosecuted or convicted if exculpatory results had been obtained through DNA analysis. The post-conviction court also found that the application for analysis was not being made for the purpose of demonstrating innocence because the evidence against the Petitioner was "overwhelming." Accordingly, the post-conviction court denied the Petitioner's request for DNA analysis.

## II. Analysis

On appeal, the Petitioner contends that the post-conviction court erred by denying his petition because he is entitled to DNA analysis on the two unknown substances. The State argues that the post-conviction court properly denied the petition. We agree with the State.

The Post-Conviction DNA Analysis Act of 2001 provides that

a person convicted of and sentenced for the commission of first degree murder, second degree murder, aggravated rape, rape, aggravated sexual battery or rape of a child, the attempted commission of any of these offenses, any lesser included offense of these offenses, or, at the direction of the trial judge, any other offense, may at any time, file a petition requesting the forensic DNA analysis of any evidence that is in the possession or control of the prosecution, law enforcement, laboratory, or court, and that is related to the investigation or prosecution that resulted in the judgment of conviction and that may contain biological evidence.

Tenn. Code Ann. § 40-30-303. A post-conviction court is obligated to order DNA analysis when the petitioner has met each of the following four conditions:

(1) A reasonable probability exists that the petitioner would not have been prosecuted or convicted if exculpatory results had been obtained through DNA analysis;

(2) The evidence is still in existence and in such a condition that DNA analysis may be conducted;

(3) The evidence was never previously subjected to DNA analysis or was not subjected to the analysis that is now requested which could resolve an issue not resolved by previous analysis; and

(4) The application for analysis is made for the purpose of demonstrating innocence and not to unreasonably delay the execution of sentence or administration of justice.

Tenn. Code Ann. § 40-30-304. "The absence of any one of the four statutory conditions results in the dismissal of the petition." Sedley Alley v. State, No. W2004-01204-CCA-R3-PD, 2004 WL 1196095, at *2 (Tenn. Crim. App. at Jackson, May 26, 2004).

"'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Grindstaff v. State, 297 S.W.3d 208, 216 (Tenn. 2009) (quoting Strickland v. Washington, 466 U.S. 668, 694 (1984). In conducting its analysis of a petitioner's claim, a post-conviction court must presume that the DNA analysis would produce "'favorable'" results to the petitioner. Powers v. State, 343 S.W.3d 36, 55 & n.28 (Tenn. 2011); see Tenn. Code Ann. § 40-30-305(1). Moreover, the court may consider this court's opinions on the petitioner's direct appeal of his convictions and his appeals of prior post-conviction actions. Id. at 56 (citation omitted). The post-conviction

court is afforded considerable discretion in determining whether to grant a petitioner relief under the Act, and the scope of appellate review is limited.  See Sedley Alley, No. W2004-01204-CCA-R3-PD, 2015 WL 5440717, at *3.  On appellate review, this court will not reverse unless the judgment of the post-conviction court is not supported by substantial evidence.  Id.

In this case, the evidence established that the Petitioner shot Sergeant Bailey through the passenger side window of Sergeant Bailey's patrol car.  A video recorded the Petitioner shooting the officer, the Petitioner's DNA was on the murder weapon, and the Petitioner made incriminating statements after the shooting.  We fail to see, and the Petitioner has not explained, how DNA testing on the two substances on Sergeant Bailey's patrol car could exculpate the Petitioner from the crimes to which he pled guilty.  Thus, the post-conviction court properly denied the petition.

## III.  Conclusion

Based upon the record and the parties' briefs, we affirm the judgment of the post-conviction court.

_____
NORMA MCGEE OGLE, JUDGE