IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 14, 2021

**MYRON LORENZO JOHNSON v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Davidson County**
**No. 2006-A-396      Mark J. Fishburn, Judge**

———————————————————

**No. M2020-01734-CCA-R3-PC**

———————————————————

The Petitioner, Myron Lorenzo Johnson, was convicted in the Davidson County Criminal Court of first degree premeditated murder, first degree felony murder, and especially aggravated robbery. The trial court merged the murder convictions and sentenced the Petitioner to life plus sixty years. Subsequently, the Petitioner filed a petition requesting DNA analysis of evidence pursuant to the Post-Conviction DNA Analysis Act of 2001. The post-conviction court summarily denied the petition, and the Petitioner appeals. Based upon our review of the record and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and JILL BARTEE AYERS, J., joined.

Myron Lorenzo Johnson, Pro Se, Clifton, Tennessee.

Herbert H. Slatery III, Attorney General and Reporter; Katharine K. Decker, Assistant Attorney General; Glenn R. Funk, District Attorney General; and Janice Norman, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I.  Factual Background**

In February 2006, the Davidson County Grand Jury indicted the Petitioner, Christopher Paul Nunley, and Paul Randall Anderson for first degree premeditated murder, first degree felony murder, and especially aggravated robbery. The Petitioner went to trial in 2008.

At trial, the proof established that on July 22, 2001, a police officer found the body of Eugene "Juan" McAdams in the bed of a pickup truck on Old Hickory Boulevard. State v. Myron Lorenzo Johnson, No. M2008-02198-CCA-R3-CD, 2010 WL 521028, at *1 (Tenn. Crim. App. at Nashville, Feb. 12, 2010), perm. app. denied, (Tenn. May 12, 2010). The victim had been covered with a white sheet, and his ankles and wrists had been duct-taped. Id. His cause of death was determined to be asphyxia and blunt force trauma to the head. Id. Several years later, Alvin Stokes, who was facing federal drug trafficking charges, gave information about the victim's death to the police in hopes of receiving favorable consideration on his sentence. Id. Stokes named the Petitioner, Christopher Nunley, and Paul Anderson as the victim's possible killers. Id. A detective interviewed Nunley, and Nunley took the officer to the home where the victim had been killed. Id. The detective then spoke with Anderson, who provided details about the victim's death. Id.

Anderson testified against the Petitioner at trial. Id. According to Anderson, the three defendants decided to rob the victim of his drugs and money, and Nunley lured the victim to Nunley's house by arranging a drug deal with the victim. Id. at *1-2. While the defendants were waiting for the victim to arrive, the Petitioner went out to his truck and obtained a shotgun and a white bag that contained a box of latex gloves. Id. at *2. When the victim entered Nunley's house, the Petitioner hit the victim on the head with the butt of the shotgun, rendering him unconscious. Id. Nunley and the Petitioner donned gloves, and Nunley began wrapping duct tape around the victim's head. Id. Nunley taped the victim's head "'completely up,'" and Nunley and the Petitioner taped the victim's hands and feet. Id. When the victim began to "come to," he was unable to breathe and began "'flopping around.'" Id. However, he soon stopped moving. Id. The Petitioner and Nunley put the victim's body into the bed of the victim's truck, and Nunley drove the truck to Old Hickory Boulevard near Blueberry Hill. Id. The Petitioner and Anderson followed in the Petitioner's truck. Id. The defendants left the victim's truck on Old Hickory Boulevard and drove to the Petitioner's girlfriend's house. Id.

An inmate who had been transported with the Petitioner and had shared a cell with the Petitioner testified that he heard the Petitioner threaten Anderson, warning Anderson not to testify against the Petitioner. Id. The inmate also testified that the Petitioner told him that the Petitioner and Anderson were involved in a murder together. Id. The Petitioner's wife, who was his girlfriend in July 2001, testified that a box of gloves in a photograph was the same type of gloves that she had brought home from work. Id. at *3. A check of Nunley's telephone records showed that he telephoned the victim on the day of the murder and that the victim telephoned Nunley several times on the evening the victim was killed. Id. Another inmate, who was serving a sentence for practicing law without a license, testified that the Petitioner told him that the Petitioner was involved in a homicide at Nunley's house; that the victim was hit on the head with the butt of a shotgun and died; and that the Petitioner wore gloves that he obtained from his wife, who worked at a hospital.

- 2 -

Id. The Petitioner testified on his own behalf and claimed that he never knew the victim and was not involved in the victim's death. Id.

After the jury convicted the Petitioner, the trial court held a sentencing hearing, merged the murder convictions, and sentenced the Petitioner to life plus sixty years for especially aggravated robbery. In the years that followed, this court affirmed the Petitioner's convictions, the habeas corpus court's summary dismissal of his petition for habeas corpus relief, and the post-conviction court's denial of post-conviction relief. See Myron Lorenzo Johnson v. State, No. M2016-01361-CCA-R3-PC, 2017 WL 1427254 at *10 (Tenn. Crim. App. at Nashville, Apr. 21, 2017), perm. app. denied, (Tenn. Aug. 16, 2017); Myron L. Johnson v. State, No. M2013-02314-CCA-R3-HC, 2014 WL 3696261, at *1 (Tenn. Crim. App. at Nashville, July 24, 2014), perm. app. denied, (Tenn. Nov. 21, 2014); Myron Lorenzo Johnson, No. M2008-02198-CCA-R3-CD, 2010 WL 521028, at *7.

On December 1, 2020, the Petitioner filed a petition for DNA testing of evidence pursuant to Tennessee Code Annotated section 40-30-303. In the petition, the Petitioner stated as follows:

> In Movants' case, the State will attempt to conclude that the testimony of [its] key witness will be substantiated by mere credibility. However, no forensic DNA evidence will substantiate their claims. Movant will show that DNA Analysis is relevant to his claims of innocence. Movant can identify documentation in support of his assertion that he is actually innocent or DNA Analysis would produce a more favorable result had it been produced prior to trial.

> Moreover, petitioner's claim is bolstered by the fact that no forensic [evidence] introduced at trial could prove the State's case of guilty beyond a reasonable doubt. Therefore the record clearly demonstrates a factual basis for the Petitioner's innocence claim. The record show[s] that the only evidence linking Movant to these crimes are not physical but rather coerced testimony that is highly suspect, considering Movants lack of pretrial challenges to the testimony of state witnesses who were admitted participants in this crime and the lack of challenge to the physical evidence.

The Petitioner attached evidence reports from the Metropolitan Nashville Police Department (MNPD) to his petition. The reports showed that the MNPD collected duct tape with pieces of latex glove embedded in the tape during the MNPD's investigation of the victim's death. Liquid nitrogen was used to separate the glove pieces from the tape, and the tape was processed for fingerprints. However, no fingerprints were found. The tape was repackaged and returned to the MNPD property room.

On December 9, 2020, the post-conviction court filed an order summarily denying the petition. In its order, the post-conviction court found that the Petitioner "has not made clear which evidence he wishes to have tested." The court noted that the Petitioner attached evidence reports to his petition and that the reports referred to latex gloves and duct tape. The post-conviction court also noted that according to the testimony at trial, latex gloves and duct tape were used during the victim's murder.[1] However, the court stated that the Petitioner "has not alleged what DNA found on any of these items would indicate." The court concluded that given that the evidence against the Petitioner primarily consisted of eyewitness testimony, "[t]here is no reason whatsoever to believe that the analysis of any of the items . . . would exonerate Petitioner." Accordingly, the post-conviction court denied the petition.

## II. Analysis

On appeal, the Petitioner contends that the post-conviction court erred by denying his petition because the court relied solely on the first of the four factors specified in the Post-Conviction DNA Analysis Act of 2001. The State argues that the post-conviction court properly denied the petition. We agree with the State.

The Post-Conviction DNA Analysis Act of 2001 provides that

> a person convicted of and sentenced for the commission of first degree murder, second degree murder, aggravated rape, rape, aggravated sexual battery or rape of a child, the attempted commission of any of these offenses, any lesser included offense of these offenses, or, at the direction of the trial judge, any other offense, may at any time, file a petition requesting the forensic DNA analysis of any evidence that is in the possession or control of the prosecution, law enforcement, laboratory, or court, and that is related to the investigation or prosecution that resulted in the judgment of conviction and that may contain biological evidence.

Tenn. Code Ann. § 40-30-303. A post-conviction court is obligated to order DNA analysis when the petitioner has met each of the following four conditions:

> (1) A reasonable probability exists that the petitioner would not have been prosecuted or convicted if exculpatory results had been obtained through DNA analysis;

---

[1] The post-conviction court presided over the Petitioner's trial.

(2)  The evidence is still in existence and in such a condition that DNA analysis may be conducted;

(3)  The evidence was never previously subjected to DNA analysis or was not subjected to the analysis that is now requested which could resolve an issue not resolved by previous analysis; and

(4)  The application for analysis is made for the purpose of demonstrating innocence and not to unreasonably delay the execution of sentence or administration of justice.

Tenn. Code Ann. § 40-30-304.  "The absence of any one of the four statutory conditions results in the dismissal of the petition."  Sedley Alley v. State, No. W2004-01204-CCA-R3-PD, 2004 WL 1196095, at *2 (Tenn. Crim. App. at Jackson, May 26, 2004).

"'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'"  Grindstaff v. State, 297 S.W.3d 208, 216 (Tenn. 2009) (quoting Strickland v. Washington, 466 U.S. 668, 694 (1984)).  In conducting its analysis of a petitioner's claim, a post-conviction court must presume that the DNA analysis would produce "'favorable'" results to the petitioner.  Powers v. State, 343 S.W.3d 36, 55 & n.28 (Tenn. 2011); see Tenn. Code Ann. § 40-30-305(1).  Moreover, the court may consider this court's opinions on the petitioner's direct appeal of his convictions and his appeals of prior post-conviction actions.  Id. at 56 (citation omitted).  The post-conviction court is afforded considerable discretion in determining whether to grant a petitioner relief under the Act, and the scope of appellate review is limited.  See Sedley Alley, No. W2004-01204-CCA-R3-PD, 2015 WL 5440717, at *3.  On appellate review, this court will not reverse unless the judgment of the post-conviction court is not supported by substantial evidence.  Id.

Turning to the instant case, the Petitioner still has not specifically identified the evidence he wants tested or explained how DNA testing on the evidence could exculpate him.  We note that this court has held that a petitioner's failure to specify the evidence to be tested compels the conclusion that the petitioner has not satisfied the requirement of Tennessee Code Annotated section 40-30-304(2) regarding the existence and condition of the evidence.  Marvin Readus v. State, No. M2017-02298-CCA-R3-PC, 2018 WL 4929499, at *4 (Tenn. Crim. App. at Nashville, Oct. 11, 2018) (citing Devon M. Crawford v. State, No. W2010-01676-CCA-R3-PC, 2011 WL 2448925, at *4 (Tenn. Crim. App. at Jackson, June 20, 2011).  In any event, given the strong evidence of the Petitioner's guilt and the proof at trial that multiple individuals were involved in the murder, there is no reasonable probability that the Petitioner would not have been prosecuted or convicted if DNA analysis had revealed the presence of the DNA of an individual other than the Petitioner.  Therefore, the post-conviction court properly denied the petition.

- 5 -

### III.  Conclusion

Based upon the record and the parties' briefs, we affirm the judgment of the post-conviction court.

_____
NORMA MCGEE OGLE, JUDGE