IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs October 27, 2022

**THOMAS N. ALLEN v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Hamblen County**
**No. 21CR570        Alex E. Pearson, Judge**

_____

**No. E2022-00373-CCA-R3-PC**

_____

The pro se Petitioner, Thomas N. Allen, appeals from the summary dismissal of his petition filed pursuant to the Post-Conviction DNA Analysis Act of 2001 ("the Act"), wherein he sought DNA testing of evidence related to his first degree murder conviction. After reviewing the record and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT W. WEDEMEYER, JJ., joined.

Thomas N. Allen, Tiptonville, Tennessee, Pro Se.

Jonathan Skrmetti, Attorney General and Reporter; James E. Gaylord, Senior Assistant Attorney General; Dan E. Armstrong, District Attorney General, for the appellee, State of Tennessee.

**OPINION**

In March 2006, a Hamblen County Criminal Court jury convicted the Petitioner of first degree premeditated murder. See State v. George Arthur Lee Smith, No. E2006-00984-CCA-R3-CD, 2007 WL 4117603, at *1 (Tenn. Crim. App. Nov. 19, 2007), perm. app. denied (Tenn. Feb. 25, 2008). At the Petitioner's joint trial, the evidence established that Defendant George Smith shot and killed the victim, Donald Wilder, Jr., with the assistance of his girlfriend, Defendant Shannon Jarnigan. Id. at *1-3, *6-7, *9-11, *12-13. Evidence further established that the Petitioner ordered that the victim's murder be committed, provided a weapon and drugs to assist in the killing, and provided money and drugs in exchange for the killing. Id. at *8-13. Several witnesses testified that the Petitioner wanted the victim, a confidential informant, killed for "snitching" on him. Id. at

*7-8, *11. Defendant Smith admitted to police that he killed the victim and that he accepted a gun from the Petitioner in order to commit this killing. Id. at *4-5. He also disclosed that he used drugs with the victim at a motel, walked outside with the victim, and, as they were standing back to back while urinating, he turned and shot the victim in the back of the head. Id. A forensic anthropologist found a skull, hand bones, a rib, and some vertebrae at the crime scene and concluded that animals had likely scattered the remains. Id. at *14. Brent Murphy, a crime scene investigator with the Morristown Police Department, recovered a pair of bloody blue jeans from the scene and retrieved a bone from one of the pant legs. Id. The Tennessee Bureau of Investigation (TBI) determined that the bone needed mitochondrial DNA testing. Id. at *15. ReliaGene Technologies, who obtained a DNA profile from both this bone and the blood sample from the victim's sister, concluded that the bone produced a mitochondrial DNA profile consistent with the victim's sister's profile, thereby linking the bone to the victim. Id. Following his conviction for first degree premeditated murder, the Petitioner appealed, and this court affirmed the Petitioner's conviction. Id. at *15-33.

Thereafter, the Petitioner filed a timely petition for post-conviction relief and writ of error coram nobis, which was denied. See Thomas Nathaniel Allen v. State, No. E2010-01971-CCA-R3-PC, 2012 WL 826522, at *1 (Tenn. Crim. App. Mar. 13, 2012), perm. app. denied (Tenn. Oct. 1, 2012). On appeal, the Petitioner argued that he was entitled to post-conviction relief based on ineffective assistance of trial counsel and prosecutorial misconduct and that he was entitled to coram nobis relief because a witness's recantation amounted to newly discovered evidence. Id. at *4-10. This court affirmed the judgments of the post-conviction court. Id. at *10.

Still later, the Petitioner filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his 2006 state court conviction for first degree premeditated murder on multiple grounds, including insufficiency of the evidence. See Thomas Nathaniel Allen v. Mike Parris, No. 2:15-CV-23-JRG-MCLC, 2018 WL 1595784, at *1 (E.D. Tenn. Mar. 30, 2018). The district court denied the petition and dismissed the action with prejudice. Id. at *16.

On November 15, 2021, the Petitioner filed a "Petition to Request Forensic DNA Analysis of Evidence Pursuant to Tenn. Code Ann. § 40-30-301 et seq.," wherein he sought testing of the "skull, loose teeth, and hair" of "alleged remains . . . of the victim." In this petition, the Petitioner claimed the results of this requested DNA testing "may show that the newly tested evidence does not have the same resulting data" as the mitochondrial DNA testing of the bone used by the State at trial to identify the victim. The Petitioner asked the court to appoint counsel to assist him in explaining the need for the DNA analysis of the aforementioned evidence, to provide him with laboratory reports prepared in the previous mitochondrial DNA analysis of the bone, as well as the underlying data and laboratory

notes thereof, and to conduct an evidentiary hearing on these issues. The record shows that the State never filed a response to this petition.

On November 16, 2021, the post-conviction court entered an order stating that the matter was set for a hearing "on February 1, 2022[,] for the Court to determine whether to appoint counsel relative to the [Petitioner's] Petition to test DNA evidence and to set this matter for a hearing."

On February 18, 2022, the post-conviction court entered an order summarily dismissing this petition. The court stated that it had considered the petition as well as this court's opinions from the Petitioner's direct appeal and the appeal from the denial of the Petitioner's petition for post-conviction relief and writ of error coram nobis before making the following findings and conclusions:

> [T]he record is clear that additional DNA testing would not rise to the standard requisite to order additional testing. DNA is not the lynchpin of this case and in fact really played a small part in the State's proof. First and foremost, DNA testing has already been performed in this case and helped establish a connection between the bone[] recovered to the deceased victim. The Court finds additional DNA testing would not exonerate the [Petitioner], or lead the State to decide not to prosecute the [Petitioner] given the wealth of additional evidence introduced in the State's case in chief at trial. The Court finds that ordering additional DNA testing would serve no legitimate purpose in this case and would only serve to waste state resources given that no reasonable probability exists that such testing would result in an acquittal or decision not to prosecute by the State. Viewed in the best light, the defendant is simply requesting the additional DNA testing not to establish his innocence or to seriously discredit the State's case but simply in hopes of establishing the State has recovered the wrong body. The Court declines to engage in such an expedition when the results would not meet the threshold requirement of the first factor of the DNA post-conviction statute.

The court also found that "given the facts of this case, the [Petitioner] is not making the request to demonstrate innocence but to attempt to thwart the administration of justice." It held that given all the evidence before it, there was "insufficient proof to grant [the Petitioner] any form of relief or DNA testing[.]"

Thereafter, the Petitioner filed a notice of appeal of the aforementioned order. This notice of appeal was stamped filed by the appellate court on March 24, 2022, which is outside the thirty-day time period for filing an appeal. See Tenn. R. App. P. 4(a) (stating that the notice of appeal "shall be filed with the clerk of the appellate court within 30 days

after the date of entry of the judgment appealed from"). However, the record also contains documentation showing that the Petitioner delivered his notice of appeal to the prison on March 17, 2022, which is within the time set for filing. Under the "mailbox rule," a paper filed by an incarcerated pro se litigant is deemed timely filed "if the paper was delivered to the appropriate individual at the correctional facility within the time set for filing." See Tenn. R. Crim. P. 49(d)(1). Accordingly, we will consider the Petitioner's notice of appeal timely filed.

## ANALYSIS

The Petitioner argues that the post-conviction court erred in denying his petition for DNA analysis. The State responds that the post-conviction court properly denied the petition because no reasonable probability exists that the Petitioner would not have been prosecuted or convicted if further analysis of different remains yielded exculpatory results. The State also asserts that the Petitioner's various procedural complaints are waived or meritless. We agree with the State.

The Post-Conviction DNA Analysis Act of 2001 provides that a petitioner convicted of specific offenses, including first degree murder,

> may at any time, file a petition requesting the forensic DNA analysis of any evidence that is in the possession or control of the prosecution, law enforcement, laboratory, or court, and that is related to the investigation or prosecution that resulted in the judgment of conviction and that may contain biological evidence.

Tenn. Code Ann. § 40-30-303. "[T]here is no statutory time limit on requests for testing and 'the right to DNA analysis under the Act may not be waived by implication.'" Powers v. State, 343 S.W.3d 36, 48 (Tenn. 2011) (quoting Griffin v. State, 182 S.W.3d 795, 799 (Tenn. 2006)); see Tenn. Code Ann. § 40-30-303 (providing that a petitioner "may at any time" file a petition for DNA analysis) (emphasis added).

A post-conviction court is given considerable discretion in determining whether to grant the petitioner relief under the Act. Jesse Haddox v. State, No. M2003-00514-CCA-R3-PC, 2004 WL 2544668, at *2 (Tenn. Crim. App. Nov. 10, 2004) (citing Jack Jay Shuttle v. State, No. E2003-00131-CCA-R3-PC, 2004 WL 199826, at *4 (Tenn. Crim. App. Feb. 3, 2004)). Consequently, this court will not reverse a post-conviction court's judgment unless it is not supported by substantial evidence. Id. (citing State v. Hollingsworth, 647 S.W.2d 937, 938 (Tenn. 1983); Willie Todd Ensley v. State, No. M2002-01609-CCA-R3-PC, 2003 WL 1868647, at *4 (Tenn. Crim. App. Apr. 11, 2003)).

- 4 -

Tennessee Code Annotated section 40-30-304 is mandatory, providing that once the State has been notified and given the opportunity to respond, the court shall order DNA analysis pursuant to the Act if it finds that:

(1) A reasonable probability exists that the petitioner would not have been prosecuted or convicted if exculpatory results had been obtained through DNA analysis;

(2) The evidence is still in existence and in such a condition that DNA analysis may be conducted;

(3) The evidence was never previously subjected to DNA analysis or was not subjected to the analysis that is now requested which could resolve an issue not resolved by previous analysis; and

(4) The application for analysis is made for the purpose of demonstrating innocence and not to unreasonably delay the execution of sentence or administration of justice.

Tenn. Code Ann. § 40-30-304. The Act also has a discretionary section, which states that after the State has been notified and given the opportunity to respond, the post-conviction court may order DNA analysis if it finds that "[a] reasonable probability exists that analysis of the evidence will produce DNA results that would have rendered the petitioner's verdict or sentence more favorable if the results had been available at the proceeding leading to the judgment of conviction," and the petitioner has satisfied the other three requirements. Id. § 40-30-305. Under either the mandatory or discretionary sections, all four requirements must be met before DNA analysis will be ordered by the court. Powers, 343 S.W.3d at 48.

Because the post-conviction court's summary dismissal of the petition was based on Code section 40-30-304, we must determine whether the criteria of this mandatory section were established by the Petitioner. While all four criteria must be satisfied before DNA testing is required under Code section 40-30-304, the most important criterion in this case is the first, namely whether "[a] reasonable probability exists that the petitioner would not have been prosecuted or convicted if exculpatory results had been obtained through DNA analysis[.]" Tenn. Code Ann. § 40-30-304(1). A reasonable probability is "'a probability sufficient to undermine confidence in the outcome.'" Powers, 343 S.W.3d at 54 (quoting Grindstaff v. State, 297 S.W.3d 208, 216 (Tenn. 2009)). Consequently, before a mandatory order of testing is given, the petitioner must establish "'a probability sufficient to undermine confidence' in the decision to prosecute or in the conviction had the State or the jury known of exculpatory DNA testing results." Id. at 55.

When considering whether Code section 40-30-304(1) has been established, we must "begin with the proposition that DNA analysis will prove to be exculpatory." Id. (footnote omitted) (citing Pervis Payne v. State, W2007-01096-CCA-R3-PD, 2007 WL 4258178, at *10 (Tenn. Crim. App. Dec. 5, 2007); Jack Jay Shuttle, 2004 WL 199826, at *5). "While courts must also consider the evidence that was presented against the petitioner at trial, the evidence must be viewed in light of the effect that exculpatory DNA evidence would have had on the fact-finder or the State." Id. (citing Jesse Haddox, 2004 WL 2544668, at *5).

This court has recognized that the facts of the offense are "paramount" to this court's review of an issue under the DNA Analysis Act. Harold James Greenleaf, Jr. v. State, No. M2009-01975-CCA-R3-CD, 2010 WL 2244099, at *3 (Tenn. Crim. App. Nov. 15, 2010). However, "the post-conviction court is not required by the Act to hold an evidentiary hearing in order to decide whether testing should be granted . . . ." Powers, 343 S.W.3d at 56. When considering the effect that exculpatory DNA evidence would have had on the fact-finder or the State, the post-conviction court must consider all available evidence, including the proof presented at trial and any stipulations of fact made by either party. Id. at 55-56; Jack Jay Shuttle, 2004 WL 199826, at *4; Mark A. Mitchell v. State, No. M2002-01500-CCA-R3-PC, 2003 WL 1868649, at *4 (Tenn. Crim. App. Apr. 11, 2003). "The recitation of the facts contained in prior appellate opinions may be helpful in determining what facts and evidence were presented at trial." Powers, 343 S.W.3d at 56. However, "[t]he 'reasonable probability' inquiry under section 40-30-304(1) of the Act requires courts to look at the effect the exculpatory DNA evidence would have had on the evidence at the time of trial or at the time the decision to prosecute was made, not on the evidence as construed by an appellate court in the light most favorable to the State." Id. at 57 (footnote omitted).

The Petitioner asserts the post-conviction court erred in denying his petition under Code section 40-30-304(1) because there were chain of custody issues with the prior DNA analysis linking the bone to the victim. He claims that if the "bones, teeth, and hair" collected from the site had been tested as he requested in his petition, then the "identity of the victim would have been seriously undermined." Initially, we note that the Petitioner has waived this issue by never referencing a chain of custody issue in his petition and by never raising this issue on direct appeal or in his post-conviction appeal. See Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."). Waiver notwithstanding, the challenges the Petitioner raises have nothing to do with the chain of custody of the bone previously tested for DNA. First, the Petitioner asserts that at trial two witnesses mistakenly identified a particular exhibit as the tested bone when the exhibit was actually a photograph of a bullet

fragment. However, the challenged testimony given by those witnesses does not affect the chain of custody regarding the tested bone. Second, the Petitioner claims that the tested bone "was not examined by the Forensic Anthropologist when she examined the others because she did not receive it until several months later from Brent Murphy of the MPD." Even if this claim were true, it would not affect the chain of custody of the tested bone or the reliability of this tangible evidence. Third, the Petitioner contends that "[Brent] Murphy left the scene of the discovered remains with a pair of blue jeans in which he later stumbled upon the [bone]—after washing bloodstains out of it that could have been very useful for testing." Again, the discovery of the bone in an item of clothing taken from the scene by an investigating officer does not raise chain of custody issues. Finally, the Petitioner asserts that if the grand jury had known that "positive identifications are not possible" using mitochondrial DNA testing, then it would not have believed TBI agent Chad Smith's testimony that mitochondrial DNA testing linked the bone to the victim, and the grand jury would not have indicted the Petitioner. This claim, which concerns the credibility of Agent Smith's testimony before the grand jury, also does not relate to any chain of custody issues.

Here, the identity of the victim was not in question at trial because Defendant Smith admitted to killing the victim, and overwhelming evidence established that the Petitioner ordered Smith to commit this killing. At trial, DNA evidence linked a bone from the crime scene to the victim. See George Arthur Lee Smith, 2007 WL 4117603, at *15. Even if the Petitioner's requested DNA results were not consistent with the DNA profile of the victim's sister, this evidence would not be exculpatory because it simply shows that the remains of more than one person were found at the site. Despite the Petitioner's claims, additional DNA testing of different human remains would not undermine the DNA results already obtained in this case. Accordingly, no reasonable probability exists that the Petitioner would not have been prosecuted or convicted if this evidence had been obtained through DNA analysis. Therefore, we conclude that the post-conviction court properly exercised its discretion in summarily dismissing the petition in this case.

The Petitioner also claims that the post-conviction court failed to make findings under Code sections 40-30-304(2) and (3) and erred in finding that he was attempting to "thwart the administration of justice" under Code section 40-30-304(4) when he was simply trying to prove that he was wrongfully indicted. See Tenn. Code Ann. §§ 40-30-304(2), (3), (4). However, a post-conviction court is not required to make findings under all subsections of Code section 40-30-304 because a petitioner's failure "to establish any single requirement may result in a dismissal of the petition." Morris Rucker v. State, No. M2018-00987-CCA-R3-PC, 2019 WL 325046, at *4 (Tenn. Crim. App. Jan. 23, 2019) (citing Charles E. Jones v. State, No. W2014-02306-CCA-R3-PC, 2015 WL 3882813, at *3 (Tenn. Crim. App. June 24, 2015)). We have already concluded that no reasonable probability exists that the Petitioner would not have been prosecuted or convicted if the

requested evidence had been obtained through DNA analysis. Because the Petitioner failed to establish Code section 40-30-304(1), the post-conviction court was not required to determine whether Code sections 40-30-304(2), (3), and (4) had been established. Moreover, in light of the Petitioner's failure to establish Code section 40-30-304(1), we need not assess the post-conviction court's finding under Code section 40-30-304(4).

Additionally, the Petitioner raises several procedural claims that do not entitle him to relief. He claims that the trial court erred in failing to appoint him counsel, to conduct a hearing, to await a response by the State before ruling, and to rule on his request for all laboratory reports, underlying data, and laboratory notes related to the prior DNA analysis conducted in his case. He also asserts that at least some of these failings amounted to a violation of his due process rights. Initially, we recognize that the Act does not entitle the Petitioner to any of these procedural mechanisms. First, the Act does not compel a post-conviction court to conduct a hearing on requests for DNA analysis. See Powers, 343 S.W.3d at 56; Morris Rucker, 2019 WL 325046, at *4; Tenn. Code Ann. § 40-30-309 (requiring the preservation of evidence when a petition for DNA analysis "is not summarily dismissed"). In addition, while a response by the State can be "helpful," see Willie Tom Ensley, 2003 WL 1868647, at *4, the Act requires only that the State be given "an opportunity to respond," not that the State must respond, see Tenn. Code Ann. § 40-30-304. Next, the appointment of counsel and the production of laboratory reports, underlying data, and laboratory notes associated with prior DNA analysis is discretionary under the Act. See Id. §§ 40-30-307 (providing that the court "may" appoint counsel for an indigent petitioner), -308 (stating that if evidence has previously been subjected to DNA analysis, the court "may" order the production of laboratory reports, as well as underlying data and laboratory notes associated with the DNA analysis). Moreover, it is well established that the Act's procedures do not violate due process. See Estate of Alley v. State, 648 S.W.3d 201, 228 (Tenn. Crim. App. 2021) (recognizing that the state-imposed requirements for obtaining DNA analysis under the Act do not create any unconstitutional deprivation of due process rights).

Finally, the Petitioner contends that the post-conviction judge should have recused based on a conflict of interest. He claims that the post-conviction judge was an assistant district attorney when the Petitioner's case was "still active." The record in this case contains no motion for recusal, and the record includes no evidence allowing this court to address a conflict of interest. Therefore, this last claim is waived.

## CONCLUSION

After reviewing the record and the parties' briefs, we affirm the post-conviction court's summary dismissal of the petition requesting DNA analysis of evidence.

- 8 -

_____
CAMILLE R. MCMULLEN, JUDGE